787 A.2d 292

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Thomas HAWKINS, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 28, 2000.

Decided Dec. 31, 2001.

Reargument Denied Feb. 22, 2002.

312

314

Kathryn R. Swedlow, Mary R. Ennis, Philadelphia, for Thomas W. Hawkins, Jr.

Robert A. Graci, Harrisburg, Patricia Coonahan, Norristown, for Com.

Before FLAHERTY, C.J., and ZAPPALA, CAPPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

ZAPPALA, Justice.

Appellant, Thomas W. Hawkins, Jr., appeals from the denial of relief under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* For the reasons that follow, we hold that Appellant has failed to demonstrate his eligibility for relief and therefore, we affirm the order of the PCRA court.[1]

Appellant was convicted of first degree murder and is currently awaiting execution of a sentence of death for that crime. *Commonwealth v. Hawkins II,* 549 Pa. 352, 701 A.2d 492 (1997)(affirming Appellant's conviction and sentence reached after retrial); *Commonwealth v. Hawkins I,* 534 Pa. 123, 626 A.2d 550 (1993)(requiring a new trial as a result of trial court's erroneously allowing introduction of improper evidence). These facts fulfill the requirements of 42 Pa.C.S. § 9543(a)(1)(ii)(requiring PCRA petitioner to demonstrate that he has been convicted of a crime and is awaiting execution of a sentence of death.).

This Court no longer applies a doctrine of "relaxed waiver" to issues not previously raised in the PCRA context. *See Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 700 (1998); *cf. Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982)(stating the rationale for relaxed waiver in direct appeals of capital sentences). Appellant asserts that PCRA counsel and trial counsel rendered ineffective assistance on numerous issues. This necessarily requires that in order to gain relief, he must plead and prove, by a preponderance of the evidence, that in the circumstances of the particular case, there was ineffective assistance of counsel, and that ineffective assistance so undermined the truth-determining process that no reliable adjudication could take place. *See* 42 Pa.C.S. § 9543(a)(2)(ii). He must also plead and prove by a preponderance of the evidence that the allegation of error has not been previously litigated or waived, *see* 42 Pa.C.S. § 9543(a)(3), and that any failure to litigate the issue in

1. This appeal is within this Court's exclusive jurisdiction of appeals. *See* 42 Pa.C.S. § 722(4).

previous proceedings could not have been the result of any rational, strategic or tactical decision by counsel, *see* 42 Pa. C.S. § 9543(a)(4).

■ In order to demonstrate that counsel ineffectively represented him, Appellant must satisfy our three-prong test. There must be merit to the underlying claim; counsel must have no reasonable basis for his or her conduct; and Appellant must demonstrate that there is a reasonable probability that, but for counsel's action or omission, the outcome of the proceeding would have been different. *Commonwealth v. Holloway,* 559 Pa. 258, 739 A.2d 1039, 1044 (1999).

Appellant's trial counsel represented him on his direct appeal to this Court. After submitting his PCRA petition *pro se,* counsel was appointed. Current counsel was obtained after denial of relief by the PCRA court. In his PCRA petition, Appellant raised four issues. Appellant now raises numerous additional issues in his counseled appeal, asserting that PCRA counsel was ineffective for not raising all the claims now before us. He argues that PCRA counsel was ineffective for failing to preserve issues which "are of arguable merit, were readily available to PCRA counsel and PCRA counsel had no reasonable basis for not litigating these claims." Appellant also argues that PCRA counsel was ineffective because that counsel labored under a conflict of interest.

In *Commonwealth v. Pursell,* 555 Pa. 233, 724 A.2d 293 (1999), we reviewed the appellant's claims of PCRA counsel's ineffectiveness in not raising numerous issues in the PCRA petition. We stated that we would review these claims if a determination regarding counsel's effectiveness could clearly be made from the record and if the record was unclear, we would remand for an evidentiary hearing. In *Pursell,* the PCRA appellant provided evidence that PCRA counsel refused to raise several issues which appellant requested to be included in the PCRA petition. The appellant then attempted to raise these issues *pro se,* either as a supplement to his counseled petition or as a concurrent petition. The PCRA court refused to allow him to raise these issues *pro se* while he

was otherwise counseled. The issues raised by the appellant were of two types. First, issues that were raised and litigated below and were raised with a developed record, and secondly, issues that were raised with "layered" claims of counsel's ineffectiveness, including the ineffectiveness of PCRA counsel for failing to raise them previously in the amended PCRA petition.

In *Commonwealth v. Albrecht*, 554 Pa. 31, 720 A.2d 693 (1998), the appellant's attorney was forced to withdraw from his representation of the appellant after filing a PCRA petition. Subsequent counsel completed an amended PCRA petition that did not include all of the issues previously presented, effectively waiving those issues. In *Albrecht*, we reviewed the issues raised by the appellant only as they related to the effectiveness of PCRA counsel in waiving the issues which were presented by the first PCRA counsel.

In the appeal presently before this Court, we find the claims fall into three categories. First, a claim of PCRA counsel's ineffectiveness, which is properly before us because it could not have been raised at an earlier proceeding, namely, that PCRA counsel suffered from an actual conflict of interest. Second, claims which were raised in the PCRA petition and litigated below. Finally, claims which were waived below and are only cognizable at this point in the appellate process for a determination of whether PCRA counsel was ineffective for failing to raise the claims in the PCRA petition.

First, we address Appellant's claim that PCRA counsel was ineffective because of an actual conflict of interest. Petitioner alleges that PCRA counsel had earlier represented Michael Tucker, a witness against Appellant during his trial. Appellant argues in his brief that PCRA counsel was an assistant public defender in Montgomery County and was appointed as Appellant's PCRA counsel on October 7, 1997. He further asserts that a different attorney in the Public Defender's office represented Tucker in criminal proceedings. On December 16, 1991, Petitioner's PCRA counsel represented Tucker at a hearing on a motion to withdraw a guilty plea.

The Commonwealth argues that Tucker's trial counsel was not a public defender in any jurisdiction and represented Tucker as private counsel. The Commonwealth admits that Appellant's PCRA counsel did represent Tucker at the hearing on the motion to withdraw a guilty plea. However, Tucker died November 11, 1992, effectively terminating that professional relationship, if it had not been previously terminated.

In *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986), we stated:

> it is true that prejudice is presumed when counsel is burdened by an actual conflict of interest, this is only if the defendant demonstrates that counsel "actively represented conflicting interests" and "that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333[ ](1980). Appellant has made neither showing. This is not a case of dual representation by a single attorney. Counsel's representation of Mr. Kay terminated before Appellant retained him. Our examination of the record reveals that Appellant's defense was not prejudiced by the fact that, at a prior time, his counsel had represented a Commonwealth witness.

*Buehl* at 1175.

Again, we reiterate that, under the PCRA a petitioner must demonstrate his eligibility for relief by a preponderance of the evidence. Presently, Appellant presents no evidence other than the allegations contained in his brief. Even when the Commonwealth contests the very facts underlying his argument, Petitioner's reply brief offers no evidence, no reference to evidence, and no suggestion that he could produce evidence regarding his claim that PCRA counsel was ineffective because of a conflict of interest.

Even the uncontradicted assertions that Appellant's PCRA counsel represented Tucker briefly and that Tucker had been a witness against Appellant are insufficient to find a conflict of interest. As in *Buehl*, PCRA counsel's representation of Tucker had been terminated well before he was appointed to

represent Appellant. Furthermore, Appellant fails to assert that PCRA counsel's previous representation of the now deceased Tucker affected, let alone adversely affected, his representation of Appellant in the current matter.

Appellant argues that post conviction counsel was ineffective for failing to raise and litigate a claim that previous counsel was ineffective for not objecting when the Commonwealth grossly misstated the strength of serological evidence which linked the Appellant to the crime scene.[2]

The Commonwealth presented evidence that saliva was found on the victim's body. Expert witness FBI agent Richard Reem testified that the saliva was from a person who had type AB blood and who was also a "secretor." When asked about the statistical significance of his testimony he stated:

> The significance of this swab being that it's from a secretor and that it's—approximately 22 percent of the black population have this particular type. Multiplying the 80 percent times 22 and then multiplying that times the four percent of the black population, you get approximately one individual in about 143 would have this particular blood type and be a secretor.

N.T. 8/17/94 at 630. The PCRA court found that:

> The testimony seems to show that Agent Reem miscalculated the statistical frequency of AB secretors in the African American population by multiplying the percentage of secretors (80%) by the percentage of people in the entire population who have the AB blood type (four percent) and multiplied that result by the percentage of people in the African American population who have the AB blood type (22%). If Agent Reem did so, then his results exaggerated the rarity of this type of saliva, which should have been 80% multiplied by 22% or 17.6%.

**2.** We note that PCRA counsel raised the following issue: "Trial counsel failed to object to, counter, rebut or otherwise challenge the Commonwealth's statistical argument with regard to saliva found on Ms. Thomas' breast and the petitioner's DNA, the Commonwealth's argument being inaccurate, confusing and misleading." Appellant's PCRA petition ¶ 30.

PCRA Opinion at 6. The PCRA court ultimately found that this apparent error was harmless error.

Appellant argues that the error cannot be considered harmless because Agent Reem was "the prosecution's star witness and the prosecutor highlighted these erroneous figures in the climax of his closing argument." Brief at 17. For the following reasons, we do not believe that Appellant has demonstrated that his trial counsel's failure to object to this evidence adversely affected the outcome of the trial and therefore we dismiss this claim.

This Court previously examined the sufficiency of the evidence against Appellant. See *Hawkins*, 701 A.2d at 500. There, among other evidence, we noted Agent Reem's statistics; however, we do not believe, given the evidence presented at trial, that the result of the trial would have been different if Agent Reem would have testified that the percentage of African Americans who are AB blood type secretors is 17.6% instead of one in 143. Appellant does not contest that his saliva type matches the type found on the victim's body. While it appears that the Commonwealth's witness erroneously mixed multipliers from different populations, the nature of the testimony that was presented by Agent Reem still inculpates Appellant in this crime. We find it significant that other evidence presented by the Commonwealth not only indicates Appellant's involvement, but drastically alters the statistical test population as such. Moreover Appellant has not demonstrated that he was prejudiced by Agent Reem's error, or trial counsel's failure to object. Additionally, Appellant presents no argument that counsel's omitted objection was not a legitimate trial tactic. It is apparent from the record that counsel attempted to refute the inculpatory serological evidence with what he believed to be exculpatory DNA evidence. The position of the defense was that DNA testimony, presented later in the trial during defense testimony, would exculpate Appellant by showing definitively that it was not his saliva. As such, Appellant has failed to demonstrate that he is eligible for relief on this issue.

■ Appellant argues that trial and subsequent counsel were ineffective in their handling of DNA evidence and testimony.[3] As alluded to above, Appellant presented DNA evidence through an expert witness, Dr. Bing. Dr. Bing testified regarding three different saliva samples taken from the body of the victim, a sample from the left breast, right breast, and thigh area. He testified that the sample from the right breast did not contain sufficient material for testing and the sample from the left breast was "inconclusive" because it appeared to contain DNA from multiple persons. N.T. 8/22/94 at 60–61. Regarding the sample taken from the thigh of the victim, Dr. Bing testified that: "I came to the conclusion that [Appellant] could not be the donor of the DNA extracted from the items that we were able to obtain interpretable results." N.T. 8/22/94 at 61. Dr. Bing was cross-examined at length regarding errors in his report, errors in handling evidence, and most extensively regarding control tests which did not render the expected "blank" finding. He admitted that a possible explanation for the abnormal result on the control test was that it had been contaminated by other samples taken from the case, or from other sources. *Id.* at 115–19. He also admitted that a known control, or a sample taken from a known source, did not appear the way it should have been expected to in the photographs presented at trial. *Id.* at 126. The Commonwealth presented Dr. Henry Lee, a forensic scientist, who testified that based upon what he perceived as errors in processing, Dr. Bing's conclusion was not scientifically valid. *Id.* at 218.

Appellant argues that trial counsel should have recalled Dr. Bing to refute Dr. Lee's criticisms. Additionally, Appellant presents an affidavit from Dr. William Shields in which Dr. Shields states the opinion: "that tests performed in this case

**3.** This issue was apparently raised in Appellant's PCRA petition which states:

32. Trial counsel presented scientific evidence, the processing, preparation and presentation of which were seriously flawed.

33. The flaws in the processing, preparation and presentation of the scientific evidence were methodically, relentlessly and effectively exposed in detail by the Commonwealth.

PCRA Petition at ¶ 32–33.

provided strong exculpatory evidence for Mr. Hawkins. The transcripts do not reflect that fact very well." Shields affidavit at ¶ 10.

Counsel's decision not to recall Dr. Bing was clearly a rational strategic decision. The transcript reveals that Dr. Bing's testing methodology was called into serious question upon cross-examination. Counsel testified to this at the PCRA hearing:

[Dr. Bing] having, what I consider a credibility problem in front of the jury, as well as a problem communicating with me, and he was my expert, not letting me know what had occurred, I would absolutely never put anybody else back on the witness stand after they had done that to me.

N.T., PCRA hearing, 12/11/1998 at 28.

The PCRA court found, "Although [Appellant] may hope he could produce a forensic expert to testify that DNA samples recovered from the victim's body did not match his, he has not placed on the record any evidence suggesting he could actually do so. In fact, had the DNA testing been performed correctly, it might have further inculpated [Appellant]." PCRA Opinion at 3. The affidavit of Dr. Shields, presented for the first time to this Court, simply does not address the deficiency recognized by the PCRA court in Appellant's argument. Dr. Shields makes hypothetical conclusions regarding Dr. Bing's testing which were already refuted at trial. Dr. Shields did not do an independent DNA test, rather he reviewed the tests done previously and the trial testimony. From this, he makes assertions such as: "If all controls were judged to have worked as required, and the DNA attributed to the evidence and known samples was typed correctly, .... then the only scientifically valid conclusion is that much of the evidence .... was not left by the victim or Mr. Hawkins, but by some other unknown individual." Shield's affidavit at 3. As previously discussed, cross-examination of Dr. Bing and the rebuttal testimony of Dr. Lee called into question whether controls worked as required and whether known samples were typed correctly. In summary, we can not find trial counsel ineffective for failing to properly present

exculpatory DNA evidence when Appellant continues to fail to demonstrate the existence of valid exculpatory DNA testing.

Appellant argues that all former counsel were ineffective for failing to contest the Commonwealth's motion *in limine* prohibiting Appellant from inquiring whether a Commonwealth witness was receiving or hoping to receive favorable treatment in his pending trial in exchange for his testimony. In the context of this argument, Appellant does not address our opinion on his direct appeal where we state: "The trial court found that neither Tucker nor Murphy were promised anything by the Montgomery County detectives for their cooperation." 701 A.2d at 505. Additionally we stated, "the record demonstrates that the two informants acted on their own initiative without the benefit of any promise or reward by the Commonwealth." 701 A.2d at 505. We are therefore constrained to find that this issue has been fully and finally litigated and is therefore not a cognizable claim for relief under the PCRA. As such, PCRA counsel cannot be found ineffective for failing to raise this issue in the PCRA petition.

Appellant next argues that the prosecution did not disclose that one of the informant/witnesses had a long drug and psychiatric history. The failure to disclose this information is, according to Appellant, a constitutional due process violation under the rationale of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant does not explain how or when he came upon the evidence of the witness's history. More significantly, he does not explain how this witness's history of psychiatric problems and drug problems are exculpatory or material in the context of his case. Additionally, the witness was questioned about his drug and alcohol problems on both direct and cross-examination. N.T. 8/16/1994 at 449 and at 469. On cross-examination, the witness was questioned about his treatment for drug dependency, including counseling. N.T. 8/16/1994 at 469. As this issue is without merit, PCRA counsel cannot be ineffective for failing to raising it.

 Appellant argues that all previous counsel were ineffective for failing to object to the trial court's instruction on reasonable doubt because the instruction given did not mirror that of the Standard Jury Instructions. It is Appellant's assertion that the jury was misled on the meaning of "reasonable doubt" by the instructions given. We disagree.

The trial court instructions were as follows:

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person not just to pause and hesitate, a mere hesitation in and of itself is not a reasonable doubt, but a hesitation concerning the guilt of a defendant may become a reasonable doubt when and if that hesitation becomes a restraint and would then cause you to be restrained from acting in a matter of highest importance in your life.

N.T. 8/24/1994 at 413.

 When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. *Commonwealth v. Prosdocimo*, 525 Pa. 147, 578 A.2d 1273 (1990). We reiterated this statement of law in our opinion on direct appeal. *See* 701 A.2d at 511.

The standard jury instruction cited by Appellant reads:

A reasonable doubt is a doubt that would cause a reasonably careful and sensible person to hesitate before acting upon a matter of importance in his own affairs. A reasonable doubt must fairly arise out of the evidence that was presented or out of the lack of evidence presented with respect to some element of the crime.

Pennsylvania Bar Institute, Pennsylvania Standard Jury Instructions: Criminal Section § 7.01(3)(1979). We do not believe that the court abused its discretion in charging the jury. In other cases, we have reviewed and approved the following charges on reasonable doubt:

would restrain a reasonably careful and sensible person from acting upon a matter of importance in his or her own affairs.

*Commonwealth v. Ragan,* 560 Pa. 106, 743 A.2d 390, 401 (2000);

A reasonable doubt cannot be a doubt fancied or conjured up in the minds of the jury to escape an unpleasant verdict; it must be an honest doubt that would restrain a reasonable man (or woman) from acting in a matter of importance to himself (or herself).

*Commonwealth v. Donough,* 377 Pa. 46, 103 A.2d 694, 697 (1954); and also:

As a standard and approved form of charge, however we are of the opinion that the jury should be told either . . . . that they should not condemn unless so convinced by the evidence that they would venture to act upon that conviction in matters of the highest importance to their own interests, or . . . . that a reasonable doubt was one that would cause them to hesitate to act in any of the important affairs of their lives.

*Commonwealth v. Young,* 456 Pa. 102, 317 A.2d 258, 261–62 (1974).

We do not believe that the charge given in this case falls outside of the parameters of clearly, adequately, and accurately defining the concept of reasonable doubt. Therefore, we cannot find fault with Appellant's former counselors for failing to object or litigate this issue.

Appellant argues that all previous counsel were ineffective for failing to object to and litigate several instances of alleged prosecutorial misconduct during closing arguments. Appellant cites the following statements:

If [the defense] tells you he is going to prove something you hold him to that. And he told you—I almost fell off my chair—he told you almost in these words but Mr. Castor didn't tell you that on the other breast was someone else's saliva, and I will prove through his own witnesses that it was someone else who left that saliva there. I didn't hear

that. That never happened. That was a complete, erroneous statement. A fabrication, perhaps? An error, perhaps? If he is wrong about that at the very beginning of the case before any evidence has gone on, what else is he wrong about?

N.T. 8/22/1994 at 311.

Ladies and Gentleman of the jury, later in my closing argument I will detail Agent Reem's reports, but very generally he said that the defendant is included in the left breast and not excluded from the right breast. Directly contrary from what Mr. Floyd told you he would prove in his opening.

N.T. 8/23/1994 at 313.

The third is the DNA testing. Mr. Floyd tells you that it absolutely excludes the defendant as a murderer. Just as a side light, don't take your eye off the ball here. Mr. Floyd asked you to make a leap of faith that if there was unidentified DNA, it must have been left by the killer as opposed to the dog, as opposed to the mosquito, as opposed to some other insect.

N.T. 8/23/1994 at 313–314.

Also you didn't have anyone come in here and say, I drew blood from the defendant. Now, one thing you do have is in evidence. You have Commonwealth's Exhibit 10 which is the known blood of the defendant taken the night of the crime.

How do you know whether they were labeled properly? How do we know whether it was contaminated between the drawing and when they got it to the laboratory? Remember the evidence that my detectives took up there, they actually took it there, and I will vouch that it wasn't tampered with in any way.

N.T. 8/23/1994 at 332.

 Appellant argues that these statements are a "gross mischaracterization of his argument to the jury." Brief at 37. Appellant's counsel's opening argument included the following:

I'm going to tell you right now that right out of [the prosecution's] case will come the reasonable doubt that will lead you to acquit my client. For example, [the prosecutor] told you that the evidence will tend to show that a very rare blood group, secreted type, was left on one of the breasts of the victim. He did not tell you that on the other breast is a secreted type that's not consistent with my client at all.

Now, I think as a matter of scientific principle, once you hear from these particular serologists or experts, they're going to tell you that if you're a secreter [sic], you remain a secreter [sic]. You don't be a secreter [sic] at one point and then the next point you emit saliva and you cease to be a secreter [sic]. Now. I think any logical person would assume that if you have two different types of saliva on any particular substance or left at any particular place, that that would tell you that two people left that saliva and not one person. That's one thing that [the prosecutor] didn't tell you.

N.T. 8/15/1994 at 48–49. Appellant asserts that the prosecution's closing argument impermissibly shifted the burden of proof to the defendant. We disagree. First, we note that at least two of the passages quoted above by Appellant were quoted verbatim in our opinion on direct appeal of this trial. *See Hawkins*, 701 A.2d at 510. When read in their totality the prosecutor's closing comments emphasize that he had presented a complete case and that the prosecution's evidence, scientific and otherwise, was sound. *See id.* We believe that the passages quoted above do not place the onus upon Appellant to prove innocence, but rather to argue to the jury that Appellant's attempts to refute or call into doubt the prosecution's case were incredible. Additionally, the court gave the following instructions to the jury:

[R]emember with respect to this particular proceeding, ultimately when I give you my charge the law, as I give you the law, will govern. And the law in this case is that the Commonwealth always has the burden of proof.

N.T. 8/23/1994 at 330, and also,

This case has been presented to you by [the prosecutors] on behalf of the Commonwealth and by [defendant's trial

330 ▮▮▮▮

counsel] on behalf of defendant. Neither the opening statements or closing arguments of counsel constitute the law you will apply in this case; nor are they part of the evidence and they should not be considered as such.

N.T. 8/24/1994 at 407. We previously held that "any prejudicial effect from the prosecutor's statement was cured by the trial court's general cautionary instruction to the jury following closing arguments. . . . . " 701 A.2d at 510. When gauging the prejudicial effect of improper statements, we consistently have noted that instructions to the jury of this sort have some obviating weight. *See Commonwealth v. Kemp,* 562 Pa. 154, 753 A.2d 1278, 1282 (2000), *Commonwealth v. Washington,* 549 Pa. 12, 700 A.2d 400, 409 (1997), and *Commonwealth v. Green,* 525 Pa. 424, 581 A.2d 544, 561 (1990). Thus, even if we were to find that this issue was not previously litigated, this issue is without merit.

▮▮▮ Appellant argues that all former counsel were ineffective for failing to investigate potential suspects. Appellant argues that his trial counsel did not investigate several other people who may have been potential suspects. This argument is not developed by Appellant past mere conjecture, and as such, he has not demonstrated his eligibility for relief by a preponderance of the evidence, as required by the PCRA.

▮▮▮ Appellant claims that he was not effectively represented during *voir dire,* and that all former counsel were ineffective for failing to litigate issues relating to jury selection. Appellant argues that counsel has a professional duty to rehabilitate every potential juror who indicates a personal inability to impartially participate in capital deliberations. Appellant fails to cite any relevant case or statute, which imposes this duty upon counsel, instead citing the *American Bar Association Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases,* Guideline 11.7.2. Appellant has not demonstrated that this claim has merit, as it appears clear from the record that questioning by the court revealed that the excluded panelists would have been unable to fulfill the duty of deliberating a penalty on a capital case.

 Appellant next asserts that all previous counsel were ineffective for failing to adequately investigate fingerprint evidence. He argues that defense counsel should have taken fingerprints from every person who had access to the crime scene so that they could be matched against latent prints around the house. Appellant conjectures that "if these prints did not match those taken from the crime scene, counsel could have gained valuable information." Brief at 47. This conjecture does not demonstrate that Appellant was prejudiced, and while he suggests that he be granted an evidentiary hearing in order to litigate this issue, he does not suggest what evidence he would present at such hearing.

Appellant's final argument relating to the guilt phase of his trial pertains to the admission of a number of detective magazines that the jury was allowed to review during deliberations. While Appellant presents his issue in the PCRA appeal as a matter of trial counsel's ineffectiveness in opening the door to the admission of this evidence, it is clear from his argument that it is an attempt to relitigate the "trial court['s error] in allowing the jury to view the contents of the eighty-one detective magazines seized from Appellant's residence." Brief at 48.

We addressed this claim of trial court error in our earlier decision. *Hawkins*, 549 Pa. 352, 701 A.2d 492, 505–06 (1997). As this issue has been fully and finally litigated, it is not cognizable under the PCRA. See 42 Pa.C.S. § 9543(3).

 Appellant makes a number of general arguments regarding trial counsel's preparation and presentation at the penalty phase of the trial. Appellant asserts that more evidence and testimony could and should have been presented regarding his mental health. He argues, for instance, that he suffered from "Intermittent Explosive Disorder, Post Traumatic Stress Disorder, and Paranoid Personality Disorder as a result of his traumatic childhood and rape as a juvenile." Brief at 57. Appellant argues repeatedly that trial counsel should have presented evidence that he had been raped while previously in prison. Appellant baldly asserts that there could

be no rational reason for not presenting this testimony. We disagree.

While Appellant may be correct in asserting that this evidence is admissible as mitigating evidence, we do not agree that trial counsel could not have had valid concerns regarding how a jury would receive this testimony. Therefore, Appellant has failed to demonstrate that trial counsel did not have a reasonable basis for his conduct or that the decision not to present this evidence was not the result of a rational, strategic or tactical decision by counsel.

Appellant argues that all former counsel were ineffective for failing to litigate prosecutorial misconduct in penalty phase closing arguments. Appellant asserts that the prosecutor unconstitutionally introduced Appellant's future dangerousness as an aggravating factor.

We note that the trial court overruled trial counsel's objections and appellate counsel presented this issue on direct appeal. Since previous counsel did raise and litigate this issue, we can not find them ineffective for failing to do so. Furthermore, the issue has been fully and finally litigated. *Hawkins,* 701 A.2d at 513–14.

Appellant argues that all previous counsel were ineffective for failing to raise an issue of whether the trial court improperly refused to allow trial counsel to inform the jury of the ramifications of a life sentence. In his PCRA petition, Appellant raised an issue of whether trial counsel was ineffective for failing to argue that a life sentence means life imprisonment without a chance for parole.

When a prosecutor uses future dangerousness as an argument for the death penalty, the court must explain what a sentence of life imprisonment means in Pennsylvania. See *Commonwealth v. Chandler,* 554 Pa. 401, 721 A.2d 1040 (1998); *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). In this case, the PCRA court found that the trial court read to the jury the text of 61 P.S. § 331.19 which prohibits the Board of Probation and Parole from

granting parole to convicts serving life sentences. PCRA opinion at 4; N.T. 8/25/1994 at 634.

Appellant's current assertion that trial counsel was ineffective for not elaborating this argument fails. He asserts that the jury may have misunderstood the meaning of the statute, and that the jury may not have understood that it could consider parole ineligibility as mitigating evidence. This conjectural argument that a jury may not have understood its instructions or the law of this Commonwealth is without merit and PCRA counsel was not ineffective for not raising it.

Appellant argues that all former counsel were ineffective for not objecting to the trial court's decision to allow the jury to see a Bill of Information. Appellant asserts that this is a violation of Pa.R.Crim.P. 1114(2). This Bill of Information was not from the current case, but was from Appellant's prior murder conviction which was introduced as an aggravating factor per 42 Pa.C.S. § 9711(d)(11). Appellant only baldly asserts that trial counsel could have no reasonable basis for not objecting to this exhibit going to the jury. In the context of this case, we disagree. The Bill of Information complained of was part of a certified record which was marked and accepted as exhibit "C–3". When the jury requested this exhibit, along with others, the court did not allow docket entries to go to the jury, but did allow the certified Bill of Information and the sentencing sheet to go to the jury. Both counsel affirmatively voiced their agreement to the documents going to the jury. N.T. 8/25/1994 at 645. Our examination of the record reveals that the evidence was admitted through the testimony of the keeper of records in the Berks County Clerk of Courts Office.[4] Trial counsel stipulated to the fact that Appellant had been previously convicted of murder. He then proceeded to ask the record keeper questions regarding the prior murder conviction on cross-examination. Most significantly, he revealed that Appellant had pleaded guilty to third degree murder.

4. We note that Appellant misrepresents these records as having come from Montgomery County. Appellant also fails to note that the Bill of Information is not from his current case.

We believe the record reflects a strategic attempt on trial counsel's part to mitigate Appellant's previous conviction by showing that Appellant had admitted to the crime, and also that the conviction was for third degree murder, a lesser degree of murder than was sought by the prosecution in that case. N.T. 8/24/1994 at 531. We do not believe that Appellant has demonstrated that allowing the jury to see a portion of exhibit C–3, including the Bill of Information, was not the outgrowth of that strategy.

Appellant argues that he was prevented from presenting, and the jury was prevented from considering, and giving the full effect to, relevant mitigating evidence. Appellant argues that the trial court improperly refused to charge the jury regarding the mitigating circumstance set forth at 42 Pa.C.S. § 9711(e)(3). This mitigating circumstance reads: "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired." The Commonwealth objected to the charge of this mitigating factor because of the lack of evidence presented to support it. The trial court sustained the objection. However, the court did charge that the jury could consider any evidence presented under 42 Pa.C.S. § 9711(e)(8), "any other evidence of mitigation concerning the character and record of the defendant and the circumstances of this case." The jury did not find that any of the mitigating circumstances applied, including the catchall of (e)(8). The trial court colloquied Appellant regarding the choice to place all evidence under (e)(8) instead of pursuing (e)(2) or (e)(3), including the following:

[defense counsel] was going to suggest to you so there wouldn't be any confusion, all of the emphasis would be put on that particular issue along with other issues and directed to what is described under the Act as Number 8, what will be on the sentencing sheet as Number 3; do you understand all of that?

N.T. 8/25/1994 at 607. Since the evidence presented was insufficient to persuade the jury to find mitigating factor (e)(8), we can not find that Appellant was prejudiced by the

trial court's finding insufficient evidence to charge (e)(2) and (e)(3).

Appellant baldly argues that he was not allowed to elicit information about the effects of stress upon a person of his personality type. Appellant refers us to a question asked to Dr. Tepper, Appellant's expert psychologist, at N.T. 8/25/1994 at 580. The trial court sustained the prosecution's objection to the following question: "And what if any, effect does stress and pressure have on a person with this type of personality profile?" The prosecutor objected that the question was irrelevant, and not based on evidence of record concerning stress at the time of the killing. N.T. 8/25/1994 at 580.

Review of the record reveals the following testimony by Dr. Tepper:

> The data also indicates that this type of functioning may be what we call brittle, somewhat brittle, meaning that under more pressure or more stress Mr. Hawkins may not be able to keep these feelings down, and in that sense they are going to come up, they are going to come out. That is not too different from all of us because sometimes our emotions or feelings come out. But when they are under such type [sic] control, the may come out in a much more unbridled fashion.

N.T. 8/25/1994 at 578. As Dr. Tepper did present evidence regarding the possible effects of stress upon a person of Appellant's personality, we do not find that Appellant has shown that prejudice resulted from the trial court's sustaining this evidentiary objection. Therefore, Appellant has not demonstrated that PCRA counsel was ineffective for failing to raise this issue.

 Appellant argues that the court's instruction to the jury incorrectly told the jury that it was not allowed to consider sympathy for the defendant or his family. The trial court instructed the jury that:

> First, that the defendant has no significant history of prior criminal convictions or, second, the youth and advanced age of the defendant at the time of the crime or, third, any other

mitigating matter concerning the character and record of the defendant or the circumstances of his offense may be considered by you to be a mitigating factor if you so find by a preponderance of the evidence.

Now, with respect to that third issue, I want to make it very clear that you cannot include sympathy for either the victim, the defendant himself, or the family within that particular definition as it relates to the third possible issue.

N.T. 8/25/1994 at 631–32. Appellant's assertion of prejudice is that "[t]he trial court's instruction .... prevented jurors who felt sympathy for the defendant to give effect to those feelings in deciding whether Appellant should live or die." Brief at 78. Appellant cites *Commonwealth v. Henry*, 524 Pa. 135, 569 A.2d 929, 941 (1990), and *Commonwealth v. Zook*, 532 Pa. 79, 615 A.2d 1, 13 (1992), as supporting his argument that the above instructions were not accurate. We disagree. In *Henry*, we approved a jury instruction which informed the jury that absolute mercy verdicts are precluded by the sentencing statute. We held:

The sentencing statute allows for consideration of a defendant's character, but contemplates that a jury's findings and emotional responses will relate to the *evidence*. Specifically, 42 Pa.C.S. § 9711(e)(8) provides that mitigating circumstances shall include "[a]ny other *evidence* of mitigation concerning the character and record of the defendant and the circumstances of his offense." (Emphasis added).

569 A.2d at 941. Likewise, in *Zook*, we stated:

The Pennsylvania death penalty statute does not permit a jury to avoid imposition of a death sentence through the exercise of an unbridled discretion to grant mercy or lenience. However, the statute does permit a defendant to introduce a broad range of mitigating evidence that can support the finding of one or more mitigating circumstances which may outweigh the aggravating circumstances found by the jury.

615 A.2d at 13–14. As Appellant does not develop his claim to demonstrate what evidence the jury was not allowed to consid-

er, we can not find either that the trial court erred in its instruction or that Appellant was prejudiced by this instruction. Thus, PCRA counsel was not ineffective for omitting this issue.

■ Appellant argues that all previous counsel were ineffective for failing to object to the prosecution's method of proving the aggravating factor set forth at 42 Pa.C.S. § 9711(d)(11)("the defendant has been convicted of another murder committed in any jurisdiction and committed either before or at the time of the offense at issue"). The prosecutor refused Appellant's offer to stipulate to a prior third degree murder conviction. After hearing arguments outside the presence of the jury, the trial court determined that a limited number of witnesses would be allowed to testify regarding the previous murder. The trial court cautioned the Commonwealth that it would not tolerate any emotional outbursts on behalf of the witnesses. These four witnesses were a state trooper involved in the investigation, the pathologist who did the autopsy, the aforementioned keeper of records of Berks County, and the previous murder victim's mother. The trial court, at the request of the prosecution placed the following on the record:

.... with respect to [the previous victim's mother], all I can say is I watched her carefully and there were no outward manifestations that were inappropriate to the Court. I noted no emotion and nothing improper that would in any way prejudice the Court from the standpoint of her conduct.

N.T. 8/25/1994 at 538. Appellant does not assert how this evidence prejudiced him. He asserts that he would have stipulated to the murder charge and admits that stipulation would have been sufficient for the jury to find the existence of the aggravating factor. We can not find that, but for the admission of this testimony, the outcome of the proceeding would have been different. We do not find PCRA counsel ineffective for not including this issue in the PCRA petition.

■ Appellant argues that the trial court improperly instructed the jury on the nature of aggravating and mitigating circumstances. Appellant asserts that "the trial court's in-

struction that aggravating and mitigating circumstances 'are things that make first degree murder cases .... either more or less terrible' impermissibly diverted the focus of the jury's life or death deliberations from a reasoned determination as the defendant's personal culpability, to an amorphous and unguided consideration of how terrible 'the case' was." Brief at 83.

Jury instructions must be read in their entirety. We note that the trial court gave detailed instructions regarding each aggravating and mitigating circumstance charged, and therefore did not give an amorphous or unguided instruction.

Appellant also asserts that cumulative effect of errors entitle him to a new trial and or sentencing but does not develop this assertion either on its merits, or in terms of the PCRA counsel's effectiveness in preparation of the PCRA petition.

For all of these reasons, we find that Appellant has not demonstrated his entitlement to relief under the Post Conviction Relief Act and affirm the order of the Court of Common Pleas of Montgomery County.[5]

Justice CAPPY files a concurring opinion.

Justice CASTILLE files a concurring opinion.

Justice SAYLOR files a concurring opinion.

CAPPY, Justice, Concurring.

I join the opinion of the majority for the reasons as set forth in my concurring opinion in *Commonwealth v. Lambert*, —— Pa. ——, —— A.2d ——, 2001 WL 1818003 (2001).

CASTILLE, Justice, Concurring.

I join the majority opinion, but write separately to further address appellant's allegations that his former PCRA counsel was ineffective.

---

**5.** We direct the Prothonotary to transmit a full and complete record of these proceedings to the Governor in compliance with 42 Pa.C.S. § 9711(i).

Appellant was represented in the PCRA proceeding below by appointed counsel, specifically, an assistant public defender in Montgomery County. PCRA counsel raised a number of claims in his PCRA petition, represented appellant at the evidentiary hearing below and, after relief was denied, filed a notice of appeal. PCRA counsel then filed a statement of matters complained of on appeal, pursuant to Pa.R.A.P. 1925(b), raising four claims to be pursued on appeal. The PCRA court filed an opinion addressing those four claims.

At some point thereafter, present counsel, who are employed by the Capital Habeas Unit of the Federal Court Division of the Defender Association of Philadelphia, apparently volunteered their services for this state court appeal.[1] The appellate brief filed by the federal defender raises twenty separate arguments; obviously, the vast majority of these claims were never raised in the PCRA proceeding below. Appellant's very first argument consists of an assertion that none of the claims are waived because they were either raised below or, if not, then former PCRA counsel was ineffective for failing to raise them. In addition, even as to the claims that appellant's former PCRA counsel in fact raised below, appellant now claims that counsel was ineffective to the extent he failed to "adequately" raise and litigate them. Finally, appellant's nineteenth claim consists of a one paragraph argument that "all prior counsel" were ineffective for failing to "properly investigate and present each of the issues presented in this appeal." Initial Brief of Appellant at 85. It thus appears that all of appellant's substantive claims, in fact, are raised through the guise of former PCRA counsel's alleged ineffective assistance.

The majority properly analyzes appellant's substantive claims as claims of PCRA counsel ineffectiveness. *See Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203, 212–13 (2001). I would emphasize in this regard that these claims do not implicate federal constitutional precepts. This is so because

---

1. Appellant's brief states that "[u]ndersigned counsel was contacted by [appellant]" and that former PCRA counsel then withdrew from the appeal. Initial Brief of Appellant at 4.

the right to counsel underlying a claim that PCRA counsel was ineffective does not derive from or implicate the Sixth Amendment, there being no federal right to counsel upon state collateral review. Instead, that right to counsel arises from the Pennsylvania Rules of Criminal Procedure, *see* Pa. R.Crim. P. 904 (formerly Rule 1504), which we have held to confer an enforceable right to the effective assistance of PCRA counsel. *Commonwealth v. Gamboa–Taylor,* 562 Pa. 70, 753 A.2d 780, 787 (2000); *Commonwealth v. Albrecht,* 554 Pa. 31, 720 A.2d 693, 699–700 (1998). In light of the Rules-based conferral of a right to PCRA counsel, this Court has not decided whether there is a state constitutional right to counsel upon PCRA review. *Albrecht,* 720 A.2d at 699 & n. 6; *Commonwealth v. Priovolos,* 552 Pa. 364, 715 A.2d 420, 421–22 (1998).

In evaluating appellant's state law claims of PCRA counsel ineffectiveness, the majority cites to the settled Pennsylvania three-prong test for counsel ineffectiveness. The majority then examines each of the underlying claims and, because it determines those claims to be lacking in merit, summarily concludes that PCRA counsel was not ineffective for failing to pursue the meritless claim at all, or · failing to pursue it differently. I agree that the majority's legal conclusions in this regard are correct, since counsel, including PCRA counsel, cannot be deemed ineffective for failing to pursue a meritless claim. See *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121, 128 (1994), *cert. denied, Peterkin v. Pennsylvania,* 515 U.S. 1137, 115 S.Ct. 2569, 132 L.Ed.2d 821 (1995); *Commonwealth v. Tarver,* 491 Pa. 253, 420 A.2d 438, 438 (1980).

By focusing on the lack of merit in the underlying claims, the majority avoids inquiring into the other prongs of the ineffectiveness test, and also avoids focusing on the actual performance of former PCRA counsel. It is worth noting, however, that appellant's claims independently fail on the merits for the further reason that his argument as to PCRA counsel's actual performance fails to address the presumption that counsel acted reasonably. Instead, appellant's argument

respecting PCRA counsel is based upon a *per se* approach to the ineffectiveness standard: *i.e.,* appellant essentially argues that, because he believes each claim has merit, PCRA counsel was obliged to discover and raise that claim, and counsel was ineffective for not raising it. But appellant makes no proffer as to what investigation PCRA counsel actually undertook, what his client told him, what claims he discovered, considered, and elected not to pursue, etc. Indeed, although appellant attaches a dozen affidavits/declarations to his brief in support of his underlying claims, it is notable that there is no affidavit from PCRA counsel, even though it is PCRA counsel's performance which is primarily at issue on this appeal. Appellant's *per* se approach to ineffectiveness fails to establish that PCRA counsel acted unreasonably in failing to discover, develop, and raise the claims he is now faulted for failing to pursue in hindsight instead of, or in addition to, the multiple claims that counsel actually pursued below. *See Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986) ("Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of counsel be overcome."), *quoted with approval in Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Commonwealth v. Williams,* 782 A.2d 517, 536 (Pa.2001) (Castille, J., concurring).

The majority's focus on the lack of arguable merit in the underlying claims, rather than upon the actual performance of PCRA counsel, is an appropriate, though not a required, manner of deciding this appeal. Both the U.S. Supreme Court and this Court have made clear that a court is not required to analyze the elements of an ineffectiveness claim in any particular order of priority; instead, if a claim fails under any necessary element of the test, the court may proceed to that element first. *See Robbins,* 528 U.S. at 286 n. 14, 120 S.Ct. 746, *citing Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Albrecht,* 720 A.2d at 701. I write simply to add that appellant's claims also fail because he has not demonstrated that PCRA counsel's failure to pursue these claims lacked a reasonable basis.

SAYLOR, Justice, Concurring.

Although I join the majority's disposition, my reasoning is different in several material respects. First, I do not agree with the majority's assessment of trial counsel's failure to object to the erroneous calculations of FBI Agent Richard Reem, the Commonwealth's expert. Agent Reem testified that: saliva found on the victim's body was from a person with type AB blood who was also a "secretor"; only one in 143 African–Americans possesses both of those characteristics; and one of them is Appellant. In his closing argument, the prosecutor described Appellant's inclusion in this serological category as "the critical piece of evidence" and emphasized to the jury that "[y]ou can exclude 99.3% of the black population from having left this sample of saliva [but] you can't exclude [Appellant]."

It appears, however, that Agent Reem miscalculated: 17.6 percent of the African American population, or roughly 1 in 6—not 0.7 percent, or 1 in 143—are type AB secretors. Given the magnitude of the witness's error and the predictable use made by the Commonwealth of the erroneous statistic, I do not view trial counsel's failure to challenge the witness's testimony as a legitimate trial tactic. Trial counsel's expectation of offering DNA evidence that would exculpate Appellant was no reason not to point out the flaw in the Commonwealth's serological evidence. Failing to do so risked the possibility (later realized) that the DNA evidence would prove less convincing than expected, while Agent Reem's testimony remained unchallenged. Nevertheless, although I consider the case a very close one, upon a review of the record, in light of the other substantial evidence against Appellant, and with due consideration to the defense evidence presented at trial, I would ultimately conclude that Appellant has failed to meet his present burden of establishing the degree of prejudice necessary to obtain post-conviction relief.

Second, in light of the potential significance of mental health evidence during the penalty phase of a capital trial, *see generally Commonwealth v. Williams*, 557 Pa. 207, 248–49, 732 A.2d 1167, 1189–90 (1999), I would not dispose of Appel-

lant's claim that trial counsel was ineffective in failing to ensure the adequate presentation of such evidence simply by concluding that trial counsel might have had valid concerns regarding a jury's reception of such evidence. Appellant's particularized claim is that trial counsel was ineffective for failing to learn, and to inform Appellant's expert, mental health witness, Dr. Allen Tepper, an attorney and licensed clinical psychologist, that Appellant had been physically and emotionally abused by his father and that he had been raped while incarcerated as a juvenile. In support of this argument, Appellant has attached to his brief, *inter alia*, copies of affidavits from Appellant's mother, attesting to the paternal abuse, and from Dr. Tepper, stating that if he had been provided with the information at issue, he would have diagnosed Appellant as suffering from intermittent explosive disorder and possibly post-traumatic stress disorder and would have concluded that, at the time of the current offense, Appellant's ability to conform his conduct to the requirements of the law was substantially impaired.

Dr. Tepper testified as a defense expert during the penalty phases of Appellant's first and second trials. At the first trial, in 1990, Dr. Tepper testified that he had evaluated Appellant during five hours of interviewing and testing; had spoken with members of Appellant's family; and had reviewed documents pertaining to the present case, an earlier case in which Appellant had been convicted of third-degree murder, and "other non-legal situations of [Appellant]." At the second trial, in 1994, Dr. Tepper referred to another three and one-half hours spent interviewing and testing Appellant, as well as separate interviews with Appellant's mother and father. On the basis of this information, Dr. Tepper opined that Appellant did not suffer from a mental illness, major thought disorder, or organic brain dysfunction, but that he kept very tight control over his emotions and might lose control intermittently. Dr. Tepper also noted that Appellant had apparently had a stable family background, with no evidence of physical or psychological abuse.

In view of the preparation undertaken by Dr. Tepper, including interviews with Appellant and his mother, I do not

believe that the affidavits provided establish a factual basis for attributing the non-disclosure of this information to omissions on the part of trial counsel. While certainly courts emphasize the obligation of capital defense counsel to undertake an adequate penalty-phase investigation of potential mitigating circumstances, *see generally Commonwealth v. Michael,* 562 Pa. 356, 377, 755 A.2d 1274, 1285 (2000)(Saylor, J., dissenting)(citing cases), this case is distinguishable from those in which trial counsel failed to investigate critical aspects of a mitigation defense that a competent attorney would have presented at the penalty phase of trial. *See, e.g., Lockett v. Anderson,* 230 F.3d 695, 711 (5th Cir.2000). Here, trial counsel's investigation/preparation subsumed extensive interviews between Appellant and an attorney and licensed clinical psychologist with particularized expertise in the mitigation arena, as well as interviews between the expert and Appellant's central family members. Although it may be that facts were concealed from Dr. Tepper by Appellant and his family in the pre-trial interviews, I do not believe that the brief and affidavits presented establish a basis for faulting trial counsel for any such omissions.[1] Accordingly, I am able to join in the majority's disposition of this claim.

1. Since the critical facts were known to Appellant, this claim also could not have been styled as involving after-discovered evidence.