J-S03020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                                  :  PENNSYLVANIA
                                                  :

          v.  :

HAKIM WILLIAMS  :
                                                  :
             Appellant  :  No. 2702 EDA 2017

Appeal from the Judgment of Sentence July 14, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000624-2015

BEFORE:  BENDER, P.J.E., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:  **FILED APRIL 12, 2019**

Appellant, Hakim Williams, appeals from the judgment of sentence entered on July 14, 2017 in the Criminal Division of the Court of Common Pleas of Philadelphia County.  We affirm.

The trial court summarized the historical and procedural facts of this case as follows.

> [On December 19, 2014, Alan Wayne Clinkscales, the complainant, testified that he resided in an apartment located along Cedar Avenue in the city of Philadelphia].  Through a series of calls and texts, [he arranged to purchase marijuana from Appellant.  The communications also implied a possible sexual encounter.]
>
> When [Appellant] arrived at approximately 8:00 p.m., Mr. Clinkscales went downstairs to let him in, bringing him back up to his apartment.  While [Appellant] was using the bathroom, Mr. Clinkscales went to his bedroom to retrieve money from his dresser to pay for the "weed."  [Appellant] entered the room, shutting the door behind him, reached into his pants and produced a gun, demanding the money.

After "ransacking" the room, looking for additional items, [Appellant] demanded to know if there was anybody else in the apartment. Learning that Mr. Nieem Gilliam was in the front room, [Appellant] forced Mr. Clinkscales, at [gunpoint], out of the bedroom towards the front room. At some point in the hallway, Mr. Clinkscales was able to knock the gun away, with the ensuing struggle spilling into the front room. After [Mr. Gilliam took] the gun out of the apartment, leaving the door to the apartment open, [he] joined the melee, attempting to subdue [Appellant]. All the while, Mr. Clinkscales [] frantically [yelled] that [Appellant] was trying to rob him and [pleaded] for someone to call the police.

Ms. Frances Mitchell testified that she was acquainted with Mr. Clinkscales who lived in the apartment directly above her mother's [residence]. On the night in question[,] she heard loud noises and ran upstairs to see what was going on and found that "[Mr. Clinkscales] had [Appellant] pinned down on the floor." She then ran back downstairs and called 911.

Philadelphia Police Officer David Chisholm testified that on December 19, 2014, he was on routine patrol with his partner, Officer Michael Kane, when they received a radio call of a person screaming [at a residence on] Cedar Avenue. On arrival, Ms. Mitchell opened the front door to the apartment building telling them, "I hear screaming upstairs. I think they're being robbed."

On reaching the second floor, Officer Chisholm found the door to Mr. Clinkscales apartment open and, looking in, he saw "three bodies on the floor wrestling around." On separating the parties, Officer Chisholm saw [Appellant] reach for the couch, and he heard someone cry out, "Watch out, watch out, that's where the gun is." Eventually, [Officer Kane] retrieved the gun from the first floor hallway.

On December 20, 2014, [police arrested and charged Appellant with the following offenses]: 1) robbery[, 18 Pa.C.S.A. § 3701(a)(1)(ii)]; 2) possession of a firearm by a person prohibited[, 18 Pa.C.S.A. § 6105(a)(1)]; 3) firearms not to be carried without a license[, 18 Pa.C.S.A. § 6106]; and, 4) carrying firearms on public streets in Philadelphia[, 18 Pa.C.S.A. § 6108].

On April 7, 2017, at the conclusion of [trial, a jury found Appellant] guilty only on the three weapons offenses and not guilty on the

charge of robbery. On July 14, 2017, [the trial court sentenced Appellant] to a period of confinement in a state correctional facility of 5 to 10 years on the charge of possession of a weapon by a person prohibited. [Appellant received four years' probation for carrying a firearm without a license and two years' probation for carrying a firearm in Philadelphia. The court ordered Appellant's probationary sentences to run concurrent to each other but consecutive to his confinement. Thus, Appellant's aggregate sentence totaled five to ten years' confinement, followed by four years' probation.]

On August 24, 2017, [Appellant] timely filed the instant appeal to [this Court.] On August 30, 2017, [the trial court] filed and served on [Appellant] an order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file and serve a statement of errors complained of on appeal, within 21 days of the order. On September 19, 2017, [Appellant] timely filed his statement of errors, [preserving the issue he raises in his brief].

Trial Court Opinion, 5/8/18, at 1-4 (superfluous capitalization omitted).

On appeal, Appellant raises the following claim for our review.

Did not the trial court err by failing to grant [A]ppellant's requested jury instruction of failure to call Nieem Gilliam, the Commonwealth's eyewitness, in violation of [A]ppellant's rights to due process and a fair trial?

Appellant's Brief at 3.

Appellant argues that the trial court erred in rejecting his request for a missing witness instruction in view of the Commonwealth's failure to call Mr. Gilliam to testify at trial. Specifically, Appellant asserts that Mr. Gilliam was only available to the Commonwealth since his interview form produced to the defense during discovery deleted Mr. Gilliam's contact information. *See* Appellant's Brief at 15. Next, Appellant points out that Mr. Gilliam possessed material information relating to Appellant's defense that he did not rob Mr.

Clinkscales or possess the recovered firearm. **_See id._** Lastly, Appellant alleges that Mr. Gilliam's testimony would not be cumulative since he "would testify that he never saw [Appellant] pull out a gun or point it at [Mr. Clinkscales] but only saw the struggle between [Mr. Clinkscales] and [Appellant] over the gun (raising the question of who actually possessed the gun)[.]" **_See id._** at 16. Given that credibility was a key issue at trial, Appellant argues that there was a reasonable probability that the court's refusal to give the instruction contributed to Appellant's convictions on the firearms offenses.[1]

> Jury instructions are to be evaluated as a whole, **_see Commonwealth v. Hawkins_**, 787 A.2d 292, 301 (Pa. 2001), and the trial court possesses broad discretion in phrasing such instructions, so long as the directions as given "clearly, adequately, and accurately" reflect the law, **_see id._**, _citing_ **_Commonwealth v. Prosdocimo_**, 578 A.2d 1273, 1274 (Pa. 1990).

**_Commonwealth v. Gibson_**, 951 A.2d 1110, 1142 (Pa. 2008) (parallel citations omitted).

We have identified the following circumstances in which the "missing witness" instruction should be given to the jury.

> When a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be

---

[1] The Commonwealth argues that Appellant waived his challenge to the jury instructions since he failed to assert a timely and specific objection after the court rejected his request for the missing witness charge. Our review of the certified record confirms that Appellant preserved his claims for appellate review.

cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

***Commonwealth v. Manigault***, 462 A.2d 239, 241 (Pa. 1983) (quotations, citations and emphasis omitted). However, this Court has summarized the circumstances that preclude issuance of the instruction as follows:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

***Commonwealth v. Boyd***, 514 A.2d 623, 626 (Pa. Super. 1986) [(Johnson, J., concurring), *appeal denied*, 531 A.2d 427 (Pa. 1987)].

In order for the "missing witness" adverse inference rule to be invoked against the Commonwealth, the witness must be available only to the Commonwealth and no other exceptions must apply. ***Commonwealth v. Culmer***, 604 A.2d 1090, 1098 (Pa. Super. 1992). In order to determine whether a witness was "available" to a party, the trial court must ascertain whether the witness was "peculiarly within the knowledge and reach" of one party. ***Commonwealth v. Boyd***, supra at 625, *citing* ***Commonwealth v. Newmiller***, 409 A.2d 834, 839 (Pa. 1979) (per O'Brien, J., with two Justices concurring and one Justice concurring by Opinion).

***Commonwealth v. Evans***, 664 A.2d 570, 573-574 (Pa. Super. 1995).

Our review of the record finds support for the trial court's determination that Mr. Gilliam was not exclusively available to the Commonwealth. Appellant obtained an interview summary that identified Mr. Gilliam as an eyewitness. Although investigators redacted Mr. Gilliam's contact information from the form, Appellant could have requested the missing information by motion. **See** Pa.R.Crim.P. 573(B)(2)(a)(i) (authorizing trial court to order inspection and copying of names and addresses of eyewitnesses where the defendant files a motion for pretrial discovery and shows that request is reasonable). Appellant, however, did not avail himself of this avenue of discovery. Moreover, when the matter came before the court for trial, the contact information within the Commonwealth's possession no longer served as a means to communicate with the witness. Hence, by the time of trial, neither party enjoyed any advantage in gaining access to Mr. Gilliam. Viewing Appellant's requested charge in light of the applicable standard, we agree with the trial court that Mr. Gilliam was not "peculiarly within the knowledge and reach" of the Commonwealth. **See Commonwealth v. Manigault**, 462 A.2d 239, 241 (Pa. 1983) (where record is devoid of any evidence that witness was available only to Commonwealth, refusal to give missing witness charge was not error). Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/19