William H. HINTON

v.

The DEPARTMENT OF JUSTICE and
the Federal Bureau of Investigation,
Appellants.

No. 87–1390.

United States Court of Appeals,
Third Circuit.

Argued Dec. 15, 1987.

Decided April 14, 1988.

Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., Richard K. Willard, Asst. Atty. Gen., Leonard Schaitman, E. Roy Hawkens (argued), Attys., Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C., for appellants.

Theodore M. Lieverman (argued), Philadelphia, Pa., for appellee.

Before SLOVITER and COWEN, Circuit Judges, and DEBEVOISE, District Judge.[*]

* Honorable Dickinson R. Debevoise, United States District Judge for the District of New Jersey, sitting by designation.

OPINION OF THE COURT

SLOVITER, Circuit Judge.

William Hinton filed this action more than seven years ago seeking the release of FBI documents pertaining to him under the Freedom of Information Act. Because the FBI withheld all or portions of a large number of the documents requested, the district court directed the FBI to prepare a *Vaughn* index, a detailed index correlating each withheld item with the statutory justification. The FBI appeals. We must determine as an initial matter whether we have jurisdiction over its appeal.

## I.

### Background

Hinton is an author and agricultural expert who has been particularly interested in the People's Republic of China throughout his career. He spent at least six years living in that country and returned home in 1953. He has since revisited on numerous occasions and authored many books and articles on China. The FBI has over the years conducted extensive investigation into Hinton's activities in China, in the Communist Party of Eastern Pennsylvania and Delaware from which he was expelled in 1964, and in various other groups.

In February 1980, Hinton wrote to the FBI invoking the terms of the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1982), to request any and all records kept by the Bureau concerning him. In the course of the next year, he exhausted the agency process due him under FOIA without securing any documents. On February 23, 1981, Hinton brought this FOIA suit, stating that he needed the requested information for a forthcoming book.

The initial issue before the district court was not whether information had been improperly withheld, but whether the FBI should be ordered to expedite its processing of Hinton's request. Although the FBI was, as the court noted, "diligently handling plaintiff's request," it was faced with a substantial backlog of unfilled FOIA requests. *Hinton v. FBI*, 527 F.Supp. 223, 224 (E.D.Pa.1981). Hinton pointed to the urgency of his need for the material and sought summary judgment and immediate processing of his request. In November, 1981, the district court, attempting to balance Hinton's needs with the rights of other FOIA requesters awaiting action by the FBI, ordered a "timed, 'piecemeal'" processing of the documents. *Id.* at 225. Under its order, Hinton was to specify the priority of the various requested documents; the FBI was to carry out its screening in accordance with Hinton's priorities and release cleared documents at ninety-day intervals. *Id.* By August, 1985, the requested files had been processed, and the FBI had made the disclosures it deemed appropriate.

There are 10,462 pages of documents (excluding duplicates) responsive to Hinton's request. For FOIA purposes, pages of documents must be distinguished from documents. For example, in one case one document consisted of 100 pages. *See Meeropol v. Meese*, 790 F.2d 942, 958 (D.C.Cir. 1986). Although on occasion the FBI has confused the terms in this case, it is clear that the relevant references throughout are to number of pages only.

According to a breakdown compiled by the FBI, the information sought by Hinton falls into six general categories: 51 percent of the records pertain to Hinton's activities in China between 1947 and 1953, and to possible perjury and violation of the Foreign Agents Registration Act; 15 percent of the records arose out of monitoring of Hinton's activities as a member of the Communist Party of Eastern Pennsylvania and Delaware between 1957 and his expulsion in 1964; 4 percent of the material pertains to the FBI's monitoring of Hinton's "participation in antiwar activities and his travels about giving pro–Communist Chinese speeches" between 1965 and 1967; about 10 percent of the material was gathered between 1970 and 1977 on "Hinton's positions and activities in the Revolutionary Union and the United States–China People's Friendship Association"; "just over 4 percent of the material is composed of information derived from such public sources as newspapers, magazines and books;" fi-

nally, about 15 percent of the material is made up of " 'See' references wherein Hinton's name came to [FBI] attention incident to the investigation of an organization or another person." App. at 62–65.

Of these documents, 2,204 pages were released in their entirety, 4,916 pages were released in more or less heavily redacted form, and 3,342 pages were entirely withheld. Most redacted and withheld material was assertedly within three FOIA exemptions: exemption 1, protecting national security information, 5 U.S.C. § 552(b)(1); exemption 7(C), protecting law-enforcement investigatory records the release of which would constitute an unwarranted invasion of personal privacy. *Id.* § 552(b)(7)(C); and exemption 7(D), protecting the identities of confidential law enforcement sources, *id.* § 552(b)(7)(D).

Hinton then moved the court to order the FBI to prepare an index as first required in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), which would provide detailed justifications for non-disclosure cross-referenced to specific segments of non-disclosed material. *Id.* at 826–28. The FBI argued, without submitting any affidavit or other factual support, that such an order "would not only be an extraordinary and unwarranted drain upon the resources of this agency and would impede the processing of other [FOIA] requests, but would also place undue burden upon the Court." App. at 98. The FBI suggested as an alternative that it be permitted to index only every 100th page, which in its view would give the court and Hinton a sufficient sampling of the agency's reasoning to allow them to make informed evaluations of the agency's compliance. After briefing on the issue, the district court on May 7, 1987 ordered the FBI to prepare a full *Vaughn* index.

The FBI appeals. It reads the district court's opinion as concluding that a modified *Vaughn* index such as it proposed is never permissible, and argues that such a conclusion is erroneous as a matter of law. Hinton has moved to dismiss the appeal for lack of appellate jurisdiction.

## II.

### *The* Vaughn *Procedure*

An order requiring a federal agency to prepare a *Vaughn* index is designed to balance an individual's right to disclosure of documents pursuant to FOIA's underlying purpose of opening government conduct to scrutiny by an informed, active citizenry, *see, e.g., N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 2326, 57 L.Ed.2d 159 (1978); *Coastal States Gas Corp. v. Department of Energy,* 644 F.2d 969, 974 (3d Cir.1981), with the agency's right to withhold documents that fall within FOIA's clearly-delineated exceptions to the general rule of disclosure, *see* 5 U.S.C. § 552(b); *EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The district court has a statutory obligation to carry out a de novo review of agency claims of exemption, 5 U.S.C. § 552(a)(4)(B), and we have described its task as being "to transform a potentially ineffective, inquisitorial proceeding against an agency that controls the information into a meaningful adversarial process." *Coastal States,* 644 F.2d at 984. Obviously, a court faced only with an agency's claim that the documents are exempt cannot carry out meaningful de novo review, and the requester's inability to challenge the agency's position "seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." *Vaughn,* 484 F.2d at 824.

The statutory provision for discretionary *in camera* review of withheld materials by the trial judge, 5 U.S.C. § 552(a)(4)(B); *see* H.R.Rep. No. 876, 93d Cong., 2d Sess. 7, *reprinted in* 1974 U.S. Code Cong. & Admin. News 6267, 6273, does not provide a complete solution, because such review may impose a significant burden on the court. The court is also deprived of the illumination to be derived from the requester's counsel. As the *Vaughn* court observed: "If the morass of material is so great that court review becomes impossible, there is a possibility that an agency could simply point to selected, clearly exempt portions, ignore disclosable sections,

and persuade the court that the entire mass is exempt." 484 F.2d at 826; *see Coastal States,* 644 F.2d at 984.

The Supreme Court first suggested in *EPA v. Mink* that the need for *in camera* review might be obviated by requiring the agency to justify its withholding by detailed affidavits or testimony. *See* 410 U.S. at 93, 93 S.Ct. at 839. In *Vaughn,* the Court of Appeals for the District of Columbia Circuit adopted this suggestion by requiring the government to subdivide each "document under consideration into manageable parts cross-referenced to the relevant portion of the Government's justification" for withholding. 484 F.2d at 827. Other courts, including this one, then adopted use of the *Vaughn* index, *see, e.g., Ferri v. Bell,* 645 F.2d 1213, 1222 & n. 11 (3d Cir.1981), *modified,* 671 F.2d 769 (3d Cir.1982); *see generally* R. Bouchard & J. Franklin, *Guidebook to the Freedom of Information and Privacy Acts* 93–94 (Supp.1985), and the Senate Judiciary Committee has expressed its support for the *Vaughn* approach, *see* S.Rep. No. 854, 93d Cong., 2d Sess. 14–15 (1974).

There is no set formula for a *Vaughn* index; subsequent decisions from the D.C. Circuit have explained that it is the function, not the form, which is important. *See, e.g., Keys v. United States Dep't of Justice,* 830 F.2d 337, 349 (D.C.Cir.1987). All that is required, and it is the least that is required, is that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure. *See, e.g., Ferri,* 645 F.2d at 1222; *Coastal States,* 644 F.2d at 982 n. 65. As we explained in *Lame v. United States Department of Justice,* 654 F.2d 917 (3d Cir.1981),

> [U]nder ordinary circumstances a *Vaughn* index ... will generally suffice to narrow the disputed issues and permit a reasoned disposition by the district court.... In both the ordinary and the exceptional case, *in camera* affidavits and submissions are authorized and the district court may resort to them in arriving at its ultimate determination. In both instances, the district court must

have furnished to it, in whatever form, public or private, all of the detailed justifications advanced by the government for non-disclosure. The government must also give the court an opportunity to review all the materials which the government claims to be exempt, even though the decision whether to inspect these materials rests with the district court.

*Id.* at 922.

### III.

#### *Appellate Jurisdiction*

■ It is evident from the foregoing that the district court's order of a *Vaughn* index is a means to an end and hence not a final order under 28 U.S.C. § 1291 (1982). Although the district court certified a second appeal under 28 U.S.C. § 1292(b), a panel of this court denied permission to appeal. Despite its failure to obtain the certified interlocutory appeal, the FBI maintains that we have jurisdiction under 28 U.S.C. § 1292(a)(1), the *Cohen* collateral order doctrine, or the All Writs Act. We conclude that none of these routes supports this court's jurisdiction.

#### A.

#### *28 U.S.C. § 1292(a)(1)*

■ The FBI argues that the district court's order has the practical effect of an injunction, and that it is immediately appealable because it might have serious, even irreparable consequences which may only be effectively challenged on an immediate appeal. *See Carson v. American Brands, Inc.,* 450 U.S. 79, 83–84, 101 S.Ct. 993, 996–97, 67 L.Ed.2d 59 (1981); *Presinzano v. Hoffman–LaRoche, Inc.,* 726 F.2d 105, 109 (3d Cir.1984). The consequences it points to are contained in affidavits, filed in this court, to the effect that compliance with the order "will entail over 30,500 man-hours (over 14 man-years), cost over $578,-000, and require the preparation of a 95,-000–page affidavit." Appellant's Brief at

12.[1]

The FBI misperceives the scope of section 1292(a)(1). As one of the cases on which it relies defined the term, an injunction under section 1292(a)(1) encompasses "any order 'directed to a party, enforceable by contempt, and designed to accord or protect *some or all of the substantive relief sought* by a complaint in more than preliminary fashion.'" *IAM Nat'l Pension Fund Benefit Plan A v. Cooper Industries, Inc.*, 789 F.2d 21, 24 (D.C.Cir.) (citation omitted) (emphasis added), *cert. denied,* —— U.S. ——, 107 S.Ct. 473, 93 L.Ed. 2d 417 (1986). As we have explained, a *Vaughn* index does not accord a requester any of the substantive relief s/he seeks, nor does it protect the substance of the matter, in the usual injunctive sense of preserving the status quo. Rather, the index is a tool for determining the requester's substantive rights.

If the fact that the court has directed a party to take some action, here to produce the index, is enough to constitute the order as an injunction, then every discovery order would qualify for immediate interlocutory appeal under section 1292(a)(1). However, the general non-appealability of discovery orders is well-established. *See, e.g., Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1116 (3d Cir.1986); *Borden Co. v. Sylk*, 410 F.2d 843, 845 (3d Cir.1969); *cf. Metex Corp. v. ACS Industries, Inc.*, 748 F.2d 150, 155–56 (3d Cir.1984) (discovery order not made appealable merely because it is framed as an injunction). Indeed, the limited scope of section 1292(a)(1) is reflected in this court's recent opinion holding that an order enforcing a settlement agreement which did not

totally end the case as to all parties is not immediately appealable as an interlocutory injunctive order, notwithstanding that the order directed specific performance. *See Saber v. Financeamerica Credit Corp.,* 843 F.2d 697 (3d Cir.1988).

The FBI argues that this case is like *Coastal States* where we held we had appellate jurisdiction under section 1292(a)(1) over the district court's order directing actual release of the requested documents after it found the government's *Vaughn* index was fatally deficient. However, in *Coastal States* we noted that the order of the district court "achieved the plaintiff's very objective—to compel production of documents." 644 F.2d at 973–74. We based our jurisdiction on the conclusion that "[b]ecause the order to produce in and of itself grants full relief to the FOIA requester, this is a quintessential case of an interlocutory order with 'serious, perhaps irreparable consequence,' and which can be 'effectually challenged' only by immediate appeal." *Id.* at 974 (quoting *Carson,* 450 U.S. at 84, 101 S.Ct. at 97). In this case, the order directing production of the *Vaughn* index does not give Hinton any of the substantive relief he seeks; it thus is not an injunction within the meaning of section 1292(a)(1).

### B.

### *28 U.S.C. § 1291*

■ The FBI next suggests that the district court's order falls within that narrow class of collateral orders appealable under the doctrine of *Cohen v. Beneficial Indus-*

---

1. We will grant Hinton's motion to strike the portion of the appendix containing these affidavits which the FBI included in the appendix without notice of any kind to Hinton or the permission of this court. The affidavits were prepared specifically for this appeal, and could not have been part of the record on appeal. We reject the FBI's suggestion that we may take judicial notice of the affidavits pursuant to Fed. R.Evid. 201. That Rule covers only adjudicative facts "not subject to reasonable dispute," that are either "generally known within the territorial jurisdiction of the trial court ... or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

questioned." Hinton vigorously disputes the FBI's predictions, contained in the affidavits, as to the amount of time required to prepare the requested *Vaughn* index. He notes, for example, that the FBI calculations are at least 25 percent too high because they are based on 11,000 pages, which includes the 2,656 pages which were deemed to be outside the scope of the plaintiff's request, App. at 173 n. 1, as to which Hinton does not seek an index. Moreover, the FBI has conceded in its affidavit that its predictions are in essence at most estimates "difficult if not impossible to quantify." *See* App. at 172. This is simply not the type of fact subject to judicial notice.

*trial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Such orders are appealable only if (1) the order conclusively decides the disputed issue; (2) the issue is entirely distinct from the merits of the case; and (3) the order would be effectively unreviewable were the appeal postponed until the issuance of a final order in the case. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *accord Metex Corp.,* 748 F.2d at 153; *see Rodgers v. United States Steel Corp.,* 508 F.2d 152, 159 (3d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975).

The collateral order doctrine is confined to a "small class" of decisions too important to await the conclusion of the case. *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2457. This court has "consistently noted that the collateral order doctrine should be narrowly construed, lest all parties aggrieved by interlocutory orders bombard the courts of appeals with allegations that they too fit within the exception." *Bachowski v. Usery,* 545 F.2d 363, 371 (3d Cir.1976); *see also Metex Corp.,* 748 F.2d at 153; *Rodgers,* 508 F.2d at 159. It is settled that discovery orders are generally not appealable as collateral orders even when they are attacked as burdensome. *See, e.g., Eastern Maico Distributors, Inc. v. Maico-Fahrzeugfabrik, G.m.b.H,* 658 F.2d 944, 947 (3d Cir.1981); *Borden,* 410 F.2d at 845. An order requiring a *Vaughn* index is in essence no different than an ordinary discovery order.

Moreover, the order at issue fails to qualify as a collateral order under *Cohen* because it does not conclusively resolve a disputed issue. The FBI maintains that it does, because it reads the district court order as concluding that the court lacked any discretion under Third Circuit precedent to order a modified index. The FBI points to the following footnote in the district court's order:

---

**2.** Other courts have, on appropriate occasion, ordered indexing of only a sampling of the withheld documents, *see Weisberg v. United States Dep't of Justice,* 745 F.2d 1476 (D.C.Cir. 1984); *Vaughn v. Rosen (Vaughn II),* 523 F.2d

---

The purpose of a *Vaughn* index is to provide the Court with sufficient information to evaluate government claims that documents requested from an agency pursuant to the [FOIA], 5 U.S.C. § 552, are properly subject to one or more exemptions to the [FOIA's] general policy of disclosure. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. den.,* 415 U.S. 977 [94 S.Ct. 1564, 39 L.Ed.2d 873] (1974). The principles and procedures outlined in *Vaughn* have been adopted by this Circuit. *Lame v. U.S. Dept. of Justice,* 654 F.2d 917 (3d Cir. 1981). Notwithstanding the Federal Bureau of Investigation's argument that two subsequent decisions from the District of Columbia Circuit permit the production of a truncated *Vaughn* index consisting of the indexing of only a portion of the documents which the government claims are exempt under [FOIA], the case law in this Circuit provides no justification for such a course. Moreover, we find that the cases upon which the FBI relies, *viz., Weisberg v. U.S. Dept. of Justice,* 745 F.2d 1476 (D.C.Cir. 1984), *Ash Grove Cement Co. v. F.T.C.,* 511 F.2d 815 (D.C.Cir.1975), do not support its position on this issue under the circumstances of this case. Consequently, we here order a complete and detailed index consistent with the sound principles enunciated in *Vaughn* and *Lame.*

*Hinton v. FBI,* No. 81–0740, slip op. at 4 n. 1 (E.D.Pa. May 7, 1987) (citations omitted).

Although the footnote is not without some ambiguity, we do not read it as signifying that the district court regarded itself as *bound* to order a full index.[2] Instead, it appears that the district court exercised its discretion to conclude that a partial index was not justified "under the circumstances of this case."

Our reading of the district court's action is supported by the fact that the court properly distinguished the cases on which the FBI relied. For example, in *Weisberg*

---

1136, 1139–40 & n. 7 (D.C.Cir.1975), but even those courts have recognized that departure from the usual *Vaughn* procedure should be limited to exceptional circumstances.

*v. United States Dep't of Justice*, 745 F.2d 1476, 1490 (D.C.Cir.1984), which the district court found inapposite, the Court of Appeals approved a random sampling because "the number of documents is excessive and it would not realistically be possible to review each and every one." The district court here could well have concluded that the burden in *Weisberg* was far greater than the burden here since the sheer magnitude of the numbers of pages involved in that case is evidenced by the fact that the agency had already delivered 60,000 pages of documents to Weisberg. *See id.* at 1489. It could also have properly distinguished *Ash Grove Cement Co. v. FTC*, 511 F.2d 815 (D.C.Cir.1975), because that case involved the random sampling of documents in the different context of a district court's own *in camera* review of exemption claims.

Finally, we read differently than the FBI even the portion of the district court's order that the FBI argues demonstrates that the district court misread our precedent. In *Lame*, we held that the government had failed to meet its obligation to provide detailed justifications for its claimed exemptions. Judge Garth, writing for the court, noted that one of the purposes of a *Vaughn* index is to "discourage conclusory claims of exemption." 654 F.2d at 921. Thus, when the district court here, after noting that the "purpose of a *Vaughn* index is to provide the Court with sufficient information to evaluate government claims that documents requested ... are properly subject to one or more exemptions to the [FOIA's] general policy of disclosure," then stated that "the case law in this Circuit provides no justification" for the truncated *Vaughn* index proposed by the FBI, we assume that the district court was concluding that, in light of the FBI's unsupported and conclusory claim of burden, the FBI had not met our standards, indeed any court's standards, for deviation from the usual *Vaughn* index procedure.

In short, taking the district court's order as a whole, it represents the district court's exercise of its discretion to order a *Vaughn* index, as it stated, "consistent with the sound principles enunciated in *Vaughn* and

*Lame.*" *Hinton,* slip. op. at 4. We do not read it to conclusively determine that our case law forbids the order of a modified *Vaughn* index in an appropriate case. Under these circumstances, the court's order cannot be viewed as a *Cohen* collateral order.

## C.

### Mandamus

■ For a similar reason, we also decline the FBI's suggestion that we exercise our authority to treat the appeal as a petition for a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651 (1982). *See Gold v. Johns–Manville Sales Corp.*, 723 F.2d 1068, 1074 (3d Cir.1983); *cf. Bogosian v. Gulf Oil Corp.*, 738 F.2d 587 (3d Cir. 1984) (mandamus review of discovery order attacked on the ground of work product protection). "The remedy of mandamus is properly invoked only in extraordinary situations," *In re Bankers Trust Co.*, 775 F.2d 545, 547 (3d Cir.1985), as a tool "to prevent grave injustice." *Bogosian*, 738 F.2d at 591.

■ Mandamus is appropriate "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943); *see also Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661, 98 S.Ct. 2552, 2556, 57 L.Ed.2d 504 (1978). Mandamus is ordinarily not available to review a decision of the district court even if erroneous so long as the decision made was one within the court's jurisdiction. *See Bankers Trust*, 775 F.2d at 547; *Rodgers*, 508 F.2d at 161.

■ It follows that mandamus cannot be used to review the district court's exercise of its discretion. *See Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35–36, 101 S.Ct. 188, 190–91, 66 L.Ed.2d 193 (1980) (per curiam); *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1117–18 (3d Cir.1986); *Bankers Trust*, 775 F.2d at 547, 549. Although a court's refusal to exercise its

discretion or failure to recognize that it has discretion might under some circumstances be an appropriate basis for mandamus, as we have explained above we view the district court's order here as an exercise of its discretion to require a full *Vaughn* index under the circumstances of this case. The district court may have believed that the burden claimed by the FBI was overstated, particularly since the district court may have recognized that the approximately 8,000 pages to be indexed can apparently fit into two file drawers, in contrast to the amount of material involved in *Vaughn* which filled 17 standard size, five drawer filing cabinets. *See Vaughn v. Rosen (Vaughn II)*, 523 F.2d 1136, 1140 n. 7 (D.C. Cir.1975). The district court also may have believed that the FBI could materially ease its burden by coding its explanation for each non-disclosure and cross-referencing the code to an explanatory portion of the index.

Even if mandamus were available to review a gross abuse of discretion, *see Rodgers*, 508 F.2d at 161–62, the court's order here was not such an abuse of discretion as would justify mandamus. Furthermore, and as a consequence, no compelling supervisory or advisory purpose would be served by our grant of the writ in this case. *See, e.g., Schlagenhauf v. Holder*, 379 U.S. 104, 112, 85 S.Ct. 234, 239, 13 L.Ed.2d 152 (1964); *Sporck v. Peil*, 759 F.2d 312, 315 (3d Cir.), *cert. denied*, 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985).

## IV.

### Conclusion

For the foregoing reasons, Hinton's motion to dismiss the appeal for lack of appellate jurisdiction will be granted.