Orlando BAEZ, Plaintiff

v.

FEDERAL BUREAU of INVESTI-
GATION and U.S. Department
of Justice, Defendants.

Civil Action No. 04–3383.

United States District Court,
E.D. Pennsylvania.

July 28, 2006.

Victor Julio Abreu, Federal Public Defender's Office, Samuel J.B. Angell, Defender Association of Philadelphia, Federal Court Division, Capital Habeas Corpus Unit, Philadelphia, PA, for Plaintiff.

Virginia A. Gibson, Virginia R. Powel, U.S. Attorney's Office, Philadelphia, PA, for Defendants.

## OPINION

POLLAK, District Judge.

On July 19, 2004, Orlando Baez, a death row inmate incarcerated in the State Correctional Institution at Graterford, Pennsylvania, brought suit against the Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("DOJ"), seeking disclosure of unredacted copies of documents contained in FBI investigative files. Baez asserts claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552; the Privacy Act, 5 U.S.C. § 552a; and provisions of the Administrative Procedure Act regarding judicial review of agency action, 5 U.S.C. §§ 706(1), (2)(A), and (2)(B). Currently before the court is a motion for summary

judgment filed by the FBI and the DOJ (Docket #10). For the reasons stated herein, the court will grant the motion.

## I. Facts

In 1993, a jury in the Pennsylvania Court of Common Pleas sentenced Baez to death for the first-degree murder of Janice Williams. *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 718 (1998). The Pennsylvania Supreme Court affirmed the conviction and sentence, *see id.* at 738, and the Supreme Court of the United States denied *certiorari, see Baez v. Pennsylvania*, 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999).

On August 29, 2000, Baez submitted a FOIA request to the Department of Justice. Declaration of David M. Hardy ("Hardy Decl."), Ex. A. Broadly speaking, Baez sought personnel records of FBI agents involved in his case, including three special agents who had testified at his trial: Richard E. Reem, a serologist; Chris Allen, a fiber analyst; and Marianne Moore, a fingerprint analyst. *Id;* Baez's Resp. in Op. to Defendants' Mot. for Summary Judgment at 2.[1]

On September 20, 2000, the DOJ referred Baez's FOIA request to the FBI. Hardy Decl., Ex. B. On September 29, 2000, the FBI wrote to Baez's attorney, stating that no documents would be processed for release until Baez submitted a notarized authorization. Hardy Decl., Ex. D. The FBI did not receive a response

from Baez and closed his FOIA request. Hardy Decl., at ¶ 9.

Over two years later, on May 29, 2003, Baez submitted a second FOIA request to the FBI. Hardy Decl., Ex. E. While reiterating his request for personnel records of FBI agents, Baez also broadened the request, demanding "any and all records" that pertained to him.[2] *Id.* at 1. This time, Baez included a notarized authorization to release records. *Id.* at 4.

In conjunction with his FOIA request, Baez moved the Court of Common Pleas to order the FBI to disclose materials relating to the Williams murder. On June 16, 2003, the Court of Common Pleas ordered the FBI to "produce all records and evidence in its possession or control concerning this case." Hardy Decl., Ex. G. However, the FBI refused to comply, asserting that the Court of Common Pleas lacked jurisdiction to issue the order. Hardy Decl., ¶ 13.

On July 18, 2003, the FBI disclosed 200 pages of records to Baez in response to his second FOIA request. Hardy Decl., Ex. I. These documents were contained in the files pertaining to the investigation of the Williams murder. Many of the documents were redacted, but the redactions were limited to information that would identify either law enforcement personnel or other individuals. Such information included names, addresses, telephone numbers, and fax numbers.

1. More specifically, Baez requested: (1) complaints about misconduct or the laboratory work of Reem, Allen, and Moore; (2) records pertaining to the investigation or disposition of any such complaints; (3) audits of FBI operations containing reviews of the work of Reem, Allen, and Moore; (4) any disclosures made by the FBI or the DOJ to the Commonwealth of Pennsylvania or to other law enforcement agencies regarding material covered in requests (1) through (3); and (5) records of the type described in requests (1)

through (4) pertaining to FBI agents other than Reem, Allen, and Moore who processed evidence obtained by local law enforcement agencies. Hardy Decl. Ex. A, at 1–2. Additionally, Baez requested drafts of a report by the DOJ Inspector General on the state of the FBI's forensic laboratory. *Id.* at 2.

2. In contrast to the first request, the second request did not mention drafts of the report regarding the FBI's forensic laboratory.

On September 17, 2003, Baez appealed to the DOJ Office of Information and Privacy ("OIP"), challenging the redactions. *See* Hardy Decl., Ex. J. On November 24, 2003, Richard L. Huff, Co–Director of OIP, wrote to Baez's attorney, stating that an additional three pages would be disclosed, but that the FBI's redactions would otherwise be affirmed.[3] *See* Hardy Decl., Ex. L, at 1.

As mentioned, the documents disclosed to Baez involve the investigation of the Williams murder. The FBI released none of the personnel records of its agents. On October 5, 2004, David Hardy, Section Chief of the FBI's Record/Information Dissemination Section, wrote to Baez, stating that the FBI would not begin a search for personnel records until Baez submitted a privacy waiver or proof of death for each of the agents. *See* Hardy Decl., Ex. M.

On November 5, 2004, the FBI disclosed an additional 223 pages to Baez. Apparently, an administrative error delayed discovery of these documents: the FBI originally searched only for files pertaining to the Williams murder, and neglected to search for other files regarding Baez. Hardy Decl. at 7 n. 2. Still, the second set of documents disclosed to Baez consisted solely of investigative files, not personnel records. Like the original 200 pages, the additional 223 pages contained redactions: the FBI removed identifying information such as names and telephone numbers of law enforcement personnel and other individuals.

Aside from removing names and identifying information from the records released to Baez, the FBI also redacted certain administrative markings, such as a "Service ID," a "FEDLINK ID," and an "IAG Number" on an account statement from the Federal Library and Information Center Committee. *See* Hardy Decl., Ex. O, at 197, 199. However, it is not clear whether these redactions were contained in the first or second set of documents released to Baez.

On January 14, 2005, the government filed a motion for summary judgment in this court, attaching a *Vaughn* index[4] to the motion. The *Vaughn* index consists of both sets of documents disclosed to Baez (a total of 423 pages), with names, addresses, phone numbers, fax numbers, and certain administrative markings redacted. The government contends that each redaction is justified by FOIA exemptions listed in 5 U.S.C. §§ 552(b)(2), (b)(6), and (b)(7)(C). These exemptions provide that federal government agencies need not disclose certain information in response to a FOIA request:

(b) This section does not apply to matters that are—

. . . . .

(2) related solely to the internal personnel rules and practices of an agency;

. . . . .

(6) personnel and medical files and similar files the disclosure of which would

**3.** According to the government, although the letter stated that three new pages were being disclosed, in fact, the "new" documents had already been released by the FBI. OIP disclosed the same pages, but with fewer redactions. Defendants' Mem. of Law in Supp. of Mot. for Summary Judgment at 7 n. 4.

**4.** This term derives from the D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973). As the Third Circuit has explained, "[a] *Vaughn* index is an index correlating each withheld document, or a portion thereof, with a specific [FOIA] exemption and relevant part of an agency's justification for nondisclosure. The *Vaughn* index is a tool designed to aid the court in determining whether the agency has properly withheld the information requested." *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1047 n. 1 (3d Cir. 1995) (citation omitted).

constitute a clearly unwarranted invasion of personal privacy;

(7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § 552(b).

In the *Vaughn* index, a code appears next to each redaction. The codes have the following meaning:

| Code | Nature of Redacted Information |
|---|---|
| (b)(2)–1 | Telephone/fax numbers specific to individual federal employees and law enforcement officers withheld under § 552(b)(2). |
| (b)(2)–2 | Sensitive FBI administrative practices and procedures withheld under § 552(b)(2). |
| (b)(6)–1 | Names and/or identifying data of FBI special agents and support personnel withheld under § 552(b)(6). |
| (b)(6)–2 | Names and/or identifying data of local, county, and state law enforcement personnel withheld under § 552(b)(6). |
| (b)(6)–3 | Names and/or identifying data of third parties who were of investigative interest to the City of Lancaster Bureau of Police withheld under § 552(b)(6). |
| (b)(6)–4 | Names and/or identifying data of third parties merely mentioned withheld under § 552(b)(6). |
| (b)(7)(C)–1 | Names and/or identifying data of FBI special agents and support personnel withheld under § 552(b)(7)(C). |
| (b)(7)(C)–2 | Names and/or identifying data of local, county, and state law enforcement personnel withheld under § 552(b)(7)(C). |
| (b)(7)(C)–3 | Names and/or identifying data of third parties who were of investigative interest to the City of Lancaster Bureau of Police withheld under § 552(b)(7)(C). |
| (b)(7)(C)–4 | Names and/or identifying data of third parties merely mentioned withheld under § 552(b)(7)(C). |

In many cases, multiple justification codes appear next to a single redaction. This indicates that the government believes that the information was properly removed under more than one FOIA exemption.

For example, three codes appear next to the redacted telephone number of an FBI special agent or member of the FBI's support staff: code (b)(2)–1, indicating that the number was redacted under § 552(b)(2) as a telephone or fax number specific to a federal employee or law enforcement officer; code (b)(6)–1, indicating that the number was redacted under § 552(b)(6) as identifying data of an FBI special agent or member of the FBI's support personnel; and code (b)(7)(C)–1, indicating that the number was redacted under § 552(b)(7)(C) as identifying data of an FBI agent or member of the FBI's support personnel. *See* Hardy Decl., Ex. O, at 108.

In addition to the *Vaughn* index, the government also submitted the declaration of David Hardy. The Hardy declaration explains why the FBI believes that the FOIA exemptions permit redacting information that falls into the categories listed above. The declaration does not, however, provide a rationale specific to each redaction. In other words, the FBI's explanation of the redactions has two components: (1) the code appearing next to each redaction identifying the category of information withheld, and (2) the reasons given in the Hardy declaration for withholding each category of information.

After hearing oral argument on February 17, 2006, the court ordered the parties to submit further briefing on the governing law. The parties have now provided the requested submissions.

## II. The Issues Before the Court

The court must decide whether the FBI properly redacted names and other identifying information, as well as administrative markings, from the two sets of documents disclosed to Baez. The issues before the court may be distilled to this question based on the following three premises.

First, the court may consider the redactions contained in both sets of documents, even though Baez's administrative appeal to OIP concerned only the first set of records. This is because the government agreed to waive the exhaustion requirement with regard to the second set of documents. *See* Baez's Resp. in Op. to Defendants' Mot. for Summary Judgment, Ex. 5. The Third Circuit has stated that in the context of FOIA litigation, the exhaustion requirement is prudential, rather than jurisdictional, in nature. *See McDonnell v. United States,* 4 F.3d 1227, 1240 n. 9 (3d Cir.1993). In light of the government's waiver, prudential considerations weigh in favor of exercising jurisdiction over the redactions contained in both sets of documents.

Second, Baez's suit challenges redactions in the investigative files released to him. It is not a claim for the disclosure of the personnel files of agents Reem, Allen, Moore, and others, which, pursuant to FOIA, Baez also requested. Baez's complaint cannot reasonably be construed to demand the personnel files.[5] The complaint states that Baez submitted a FOIA request for "documents related to [his criminal] case" and "any and all records pertaining to Mr. Baez." *See* Complaint at ¶¶ 12, 14. These statements suggest that Baez seeks records that pertain to him directly, not to FBI agents. Indeed, the complaint does not even mention that Baez requested, or was denied, access to personnel files. Furthermore, throughout the complaint, Baez focuses almost entirely on redactions in the investigative files,[6] and the first set of redacted investigative files are attached to the complaint as Exhibit A.

It is true that Baez structured the Prayer for Relief in somewhat broader terms, demanding, *inter alia,* "[a]n injunction ordering Defendants to make available to Baez full unredacted versions of Exhibit A and any other documents or evidence in their possession and control." *See* Complaint at 6, ¶ (b). Despite this isolated reference to additional documents, the fact that the complaint focuses almost exclusively on the redactions demonstrates that Baez stated a claim regarding only the redacted information. Therefore, Baez's FOIA request for the personnel files is not before the court.

Third, the FBI's refusal to comply with the order issued by the Court of Common Pleas to disclose materials related to the investigation of Baez is not before the court. Baez's attorney stated at oral argument that he is not "asking this Court to enforce the order." Tr. of 2/17/2006 Hearing at 23.

## III. Analysis

### A. FOIA Claim

#### 1. Adequacy of the *Vaughn* Index

A *Vaughn* index, coupled with an affidavit (in this case, the Hardy declaration), must provide the court and the requester with a sufficiently concrete explanation of the government's reasons for withholding information under a FOIA exemption. After all, Baez cannot mount a challenge to the redactions without knowing, in fairly specific terms, what information was redacted and why the government deemed the redaction justified. As the Third Circuit has stated, "[w]hile there is

---

5. Baez seems to assume that a claim for personnel files is presently before the court. *See* Baez's Resp. in Op. to Defendants' Mot. for Summary Judgment at 21–26.

6. *See* Complaint at ¶ 16 ("[t]he document production had numerous redactions"); *id.* at

¶ 19 ("Baez timely submitted a detailed 11 page letter [to OIP] appealing the numerous improper redactions of the materials released"); *id.* at 22 ("Defendants ... have possession of an unredacted version [of the disclosed documents].").

no set formula for a *Vaughn* index, the hallmark test is 'that the requester and the trial judge be able to derive from the index a clear explanation of why each document or portion of a document withheld is putatively exempt from disclosure.'" *Davin v. U.S. Dep't of Justice*, 60 F.3d 1043, 1050 (3d Cir.1995) (quoting *Hinton v. Dep't of Justice*, 844 F.2d 126, 129 (3d Cir.1988)).

In *Davin*, as in the case at bar, the government provided the district court with an affidavit that included a list of "justification categories" as well as an explanation of the categories. 60 F.3d at 1050. In *Davin*, as here, "[e]ach justification category was denoted by a three or four letter code. These codes appeared next to the redacted portions of the [documents]." *Id.* The Third Circuit held that the coding system failed to provide enough information about the contents of the redacted documents and the rationale for redaction, stating: "It is insufficient for the agency to simply cite categorical codes, and then provide a generic explanation of what the codes signify." *Id.* at 1051 (citation omitted).

Although here, as in *Davin*, the government submitted a *Vaughn* index based largely on justification codes, *Davin* does not control this case. First, the *Davin* court explicitly declined to hold that a *Vaughn* index based on justification codes is insufficient *per se*. *Id.* Second, and critically, the government in *Davin* withheld thousands of pages, *id.* at 1047, whereas the government in this case has redacted only identifying information and administrative markings. It is one thing to withhold an entire page, or a substantial portion thereof, with only a coded explanation. It is quite another to redact a name or an address from a document that is otherwise released in full.

Here, because the redactions are minimal, Baez knows the nature of the information withheld and the specific context in which that information appears. To cite one example typical of the redactions in this case, the government has removed the name appearing under the words "Personally Delivered By" from a letter regarding the transmission of evidence from the Lancaster Bureau of Police to the FBI. Hardy Decl., Ex. O, at 1. While the name is omitted, the letter furnishes Baez with the facts he needs to understand and challenge the redaction. Indeed, it is hard to see how the government could have provided Baez with more information about the redactions without disclosing the redacted information itself. Thus, this case is worlds apart from *Davin*, where the Third Circuit found the *Vaughn* index insufficient because it "provide[d] no information about particular documents that might be useful in evaluating the propriety of the decision to withhold." 60 F.3d at 1051.

In *Keys v. United States Department of Justice*, 830 F.2d 337, 349–50 (D.C.Cir. 1987), the D.C. Circuit held that coded rationales are sufficient to explain the redaction of identifying information such as names. In *Keys*, the government redacted information that would identify individuals falling into categories such as "third parties mentioned in FBI investigative files," "subjects of FBI investigations," and "informants." *Id.* at 349. Here, as in *Keys*, the government has provided a sufficient *Vaughn* index and accompanying affidavit.

**2. The Merits of Baez's FOIA Claim**

■ The government bears the burden of showing that a FOIA exemption justifies the redaction of information appearing in the investigative files, and a district court reviews the redactions *de novo*. *Davin*, 60 F.3d at 1049. The Third Circuit has articulated the standard for summary judgment in the context of FOIA claims as follows:

[A]n agency is entitled to summary judgment if its affidavits describe the withheld information and the justification for withholding with reasonable specificity, demonstrating a logical connection between the information and the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.

*Am. Friends Serv. Comm. v. Dep't of Def. Through Def. Logistics Agency,* 831 F.2d 441, 444 (3d Cir.1987) (citations and internal quotation marks omitted).

### a. Redactions under 5 U.S.C. § 552(b)(7)(C)

Title 5 U.S.C. § 552(b)(7)(C) provides that federal government agencies need not disclose "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . ." Here, there is no question that the documents were "compiled for law enforcement purposes": the records pertain to the investigation of crimes, including the Williams murder.

■ To determine whether disclosure of identifying information contained in the investigative files "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the court must engage in a two-part inquiry. First, the court must determine whether there is a privacy interest in keeping the information secret. *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989); *Davin,* 60 F.3d at 1058–59. If so, the court must consider whether the public interest in disclosure

outweighs the interest in secrecy. *See Reporters Committee,* 489 U.S. at 771, 109 S.Ct. 1468; *Davin,* 60 F.3d at 1059–60.

■ In this case, the government redacted names and identifying information of four categories of individuals: (1) FBI special agents and support personnel; (2) local, county, and state law enforcement personnel; (3) third parties who were of investigative interest to the City of Lancaster Bureau of Police; and (4) third parties merely mentioned in the files. The Third Circuit has recognized that similar categories of individuals, including interviewees, witnesses, and suspects, have a substantial privacy interest in maintaining the secrecy of their names and other identifying information:

Suspects of the investigation have the most obvious privacy interest in not having their identities . . . revealed. However, disclosure of the names of interviewees and witnesses may result in embarrassment and harassment to them as well. Criminal investigations turn up a myriad of details about the personal lives of witnesses and interviewees and for some, disclosure of the fact of cooperation with the investigation may itself result in reprisals or strained personal relationships. Moreover . . . many people may have reason to seek out and question those who have supplied information in the course of a criminal investigation.

*Landano v. U.S. Dep't of Justice,* 956 F.2d 422, 426 (3d Cir.1992) (citations omitted), *vacated in part on other grounds and remanded,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993);[7] *see also Nat'l Archives and Records Admin. v. Favish,* 541 U.S. 157, 166, 124 S.Ct. 1570, 158 L.Ed.2d 319 (2004); *Reporters Committee,* 489 U.S. at 774–775, 109 S.Ct. 1468; *Man-*

---

7. The Third Circuit's opinion in *Landano* addressed both 5 U.S.C. § 552(b)(7)(C), the exemption at issue here, and 5 U.S.C. § 552(b)(7)(D). The Supreme Court's opinion discussed only § 552(b)(7)(D).

*na v. U.S. Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir.1995); *Davin*, 60 F.3d at 1058. Law enforcement personnel, like private individuals, also have a significant interest in keeping their identities secret. *See Landano*, 956 F.2d at 426–27.

While the interest in secrecy here is fairly strong, the public interest in disclosure is weak. Because the investigative files have been released, disclosing names would shed little, if any, additional light on how the FBI operates. This case closely resembles *Landano*, where the government released an investigative file to a convicted defendant, redacting the names of FBI and state law enforcement employees, interviewees, and third parties. 956 F.2d at 426. The Third Circuit stated that revealing names would provide no additional information about the way the FBI "conducts business." 956 F.2d at 430. In this case, as in *Landano*, "there is information in the file that could be used for the relevant purpose of evaluating the performance of the federal agency involved

but that information has been disclosed and there is no reason to believe that the additional disclosure of the names would materially enhance anyone's ability to perform that evaluation." 956 F.2d at 431.[8]

Furthermore, although Baez contends that the FBI made errors in investigating the Williams murder, he has failed to make a showing of possible mistake or impropriety. Baez notes that in *Commonwealth v. Hawkins*, 567 Pa. 310, 787 A.2d 292, 298 (2001)—a case unrelated to the Williams murder—the Pennsylvania Supreme Court found that an "agent Richard Reem" misstated the statistical significance of certain scientific evidence.[9] It would appear that this was the same Richard Reem who testified as a serologist at Baez's trial, focusing on "blood, saliva, and other biological evidence found at the crime scene and on the victim." Hardy Decl., Ex. E, at 1–2. Based on Reem's misstatements in *Hawkins*, Baez asserts that Reem's work in the investigation of the Williams murder may be unreliable.[10]

---

**8.** *See also Sheet Metal Workers Int'l Ass'n v. U.S. Dep't of Veterans Affairs,* 135 F.3d 891, 905 (3d Cir.1998) (holding that FOIA does not require disclosure of names, social security numbers, and addresses of a government contractor's employees).

**9.** In *Hawkins*, the Pennsylvania Supreme Court stated:

The Commonwealth presented evidence that saliva was found on the victim's body. Expert witness FBI agent Richard Reem testified that the saliva was from a person who had type AB blood and who was also a "secretor." When asked about the statistical significance of his testimony he stated:
The significance of this swab being that it's from a secretor and that it's-approximately 22 percent of the black population have this particular type. Multiplying the 80 percent times 22 and then multiplying that times the four percent of the black population, you get approximately one individual in about 143 would have this particular blood type and be a secretor.
The PCRA court found that:

The testimony seems to show that Agent Reem miscalculated ·the statistical frequency of AB secretors in the African American population by multiplying the percentage of secretors (80%) by the percentage of people in the entire population who have the AB blood type (four percent) and multiplied that result by the percentage of people in the African American population who have the AB blood type (22%). If Agent Reem did so, then his results exaggerated the rarity of this type of saliva, which should have been 80% multiplied by 22% or 17.6%.

787 A.2d at 298 (citations omitted). The acronym "PCRA" refers to Pennsylvania's Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* Justice Saylor also discussed Reem's erroneous testimony in a concurring opinion. *See Hawkins,* 787 A.2d at 310–311 (Saylor, J., concurring).

**10.** Baez advances this argument as a basis for releasing the personnel files of Reem, Allen, Moore, and other FBI agents. As explained above, Baez's request for the personnel files is

Where exposing possible government impropriety provides the basis for overriding a privacy interest, the Supreme Court has held that exemption § 552(b)(7)(C) requires the FOIA requester to make a significant evidentiary showing:

We hold that, where there is a privacy interest protected by Exemption 7(C) and the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred.

*Favish,* 541 U.S. at 174, 124 S.Ct. 1570.

The fact that Reem's testimony in *Hawkins* was flawed does not, standing alone, operate to "establish" even the barest of "bare suspicion[s]" of error with respect to his part in investigating the Williams murder or his testimony at Baez's trial. *See Oguaju v. United States,* 378 F.3d 1115, 1117 (D.C.Cir.2004) (affirming a grant of summary judgment where a requester asserted, without substantiation, that a government informant committed perjury); *Butler v. DEA,* No. 05–1798, 2006 WL 398653, at *5 (D.D.C. Feb.16, 2006) (granting summary judgment against a requester on the ground that "bald assertions of misconduct" by government officials are insufficient under *Favish); Peltier v. FBI,* No. 03–905, 2005 WL 735964, at *15

(W.D.N.Y. Mar.31, 2005) (stating that a FOIA requester who "presented no evidence of any illegality on the part of the FBI" failed to satisfy the *Favish* standard). While the *Hawkins* court criticized Reem's testimony, it did not suggest that Reem intentionally misrepresented the evidence. Indeed, Baez provides no reason to view Reem's testimony in *Hawkins* as anything other than an isolated occurrence in an unrelated case. Baez's claim for additional disclosure is also undercut by the fact that he has not identified any signs of error in the investigative files, which were disclosed to him with only limited redactions. Therefore, the government properly removed identifying information under § 552(b)(7)(C).

**2. Redactions under 5 U.S.C. § 552(b)(6)**

The government also argues that the FBI properly withheld names and identifying information under 5 U.S.C. § 552(b)(6).[11] However, all of the information withheld under § 552(b)(6) was also withheld under § 552(b)(7)(C). Because the government properly withheld information under § 552(b)(7)(C), the court need not reach the § 552(b)(6) argument.

**3. Redactions under 5 U.S.C. § 552(b)(2)**

■ In addition to withholding names and other identifying information under §§ 552(b)(6) and (b)(7)(C), the government has justified certain withholdings pursuant to § 552(b)(2), which exempts records "related solely to the internal personnel rules

---

not before the court. Nonetheless, Reem's misstatements in *Hawkins* have some relevance to Baez's request for information that identifies Reem in the investigative files.

Baez also contends that the work of Allen and Moore could be unreliable, but he does not offer any evidence that Allen and Moore made errors in past investigations.

11. Section 552(b)(6) provides:

(b) This section does not apply to matters that are—

.    .    .    .    .

(6) personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy....

and practices of an agency." The government withheld two types of information under § 552(b)(2): (1) telephone and fax numbers specific to federal employees and law enforcement officers, and (2) allegedly sensitive information regarding FBI administrative practices and procedures. However, the government did not rely on § 552(b)(2) as the *sole* basis for redacting any of the telephone and fax numbers. Rather, the telephone and fax numbers also fell within category (b)(7)(C)–1, meaning that they were withheld as identifying data of FBI special agents and support personnel under § 552(b)(7)(C). *See* Hardy Decl. at 15 n. 4. The court has already concluded that the redactions under § 552(b)(7)(C) were proper. Therefore, it need not decide whether the telephone and fax numbers were properly redacted under § 552(b)(2).

In contrast to the telephone and fax numbers, the allegedly sensitive information regarding FBI administrative practices and procedures was withheld solely under § 552(b)(2). Thus, the remaining question is whether the government correctly withheld information concerning FBI administrative practices and procedures under § 552(b)(2).

The redacted information regarding FBI practices and procedures is quite minimal. The FBI removed a total of ten administrative markings, including such information as a "Service ID," a "FEDLINK ID," and an "IAG Number" on an account statement from the Federal Library and Information Center Committee. *See* Hardy Decl., Ex. O, at 197, 199.

The Third Circuit stated in *Davin* that the § 552(b)(2) exemption "pertains to 'routine matters' of 'merely internal significance' in which the public lacks any substantial interest." 60 F.3d at 1064 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 369–70, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)). The internal markings at issue here could not be of any interest to the public, and the FBI properly removed them.

## B. Privacy Act Claim (Count II)

■ In Count II, Baez asserts that he is entitled to disclosure of the redacted information under the Privacy Act, 5 U.S.C. § 552a. While Baez does not specify the subsection of § 552a under which he brings suit, the court surmises that his claim arises under § 552a(d)(1), which allows individuals to inspect records pertaining to themselves.[12] Section 552a(k)(2) provides that agencies may promulgate rules exempting "investigatory material compiled for law enforcement purposes" from § 552a(d)(1). The investigative files that Baez requested are contained in the FBI's Central Records System, *see* Hardy Decl., at ¶ 20, which is exempt from § 552a(d) under 28 C.F.R. § 16.96(a)(1) and (b)(2)(i), *see Bassiouni v. F.B.I.*, 436 F.3d 712, 715 n. 3 (7th Cir.2006). Therefore, the court will grant the government's motion for summary judgment as to Count II.

## C. Claims under 5 U.S.C. §§ 706(2)(A) & (B) (Count III)

■ In Count III, Baez asserts that the redacted information should be released to him under 5 U.S.C. §§ 706(1), (2)(A) and (2)(B). Section 706(2)(A) requires a court

---

12. Section 552a(d)(1) provides in relevant part:
   (d) Access to records.—Each agency that maintains a system of records shall—
   (1) upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him and upon his request, a person of his own choosing to accompany him, to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . .

to set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." However, § 706(2)(A) provides only " 'a default standard of judicial review' " of agency action. *Al–Fayed v. C.I.A.,* 254 F.3d 300, 304 (D.C.Cir.2001) (citation omitted). Here, the challenged redactions have been judicially reviewed *de novo,* as required by FOIA, *see* 5 U.S.C. § 552(a)(4)(B), and *de novo* review supplants review under § 706(2)(A), *see Al–Fayed,* 254 F.3d at 304. Therefore, the government's motion for summary judgment will be granted as to Count III insofar as the claim arises under § 706(2)(A).

■ The government is also entitled to summary judgment as to Count III insofar as the claim arises under § 706(2)(B). Section 706(2)(B) provides that a reviewing court shall set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." Baez asserts in his complaint that the government, by redacting the investigative file, "violated his Constitutional rights to due process, confrontation and against cruel and unusual punishment, as guaranteed by the United States Constitution Amendments V, VI, VIII, and XIV." Complaint at ¶ 30. As the basis for these constitutional arguments, Baez alleges that disclosing the redacted information will reveal "critical evidence which could help exonerate him and vacate his convictions and death sentence." Complaint at ¶ 33.

The government's duty to disclose exculpatory information is defined by *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny. If Baez believes that Pennsylvania prosecutors failed to comply with *Brady,* the issue is of a kind that can be raised via collateral challenge to his conviction or sentence. But here, Baez asserts a constitutional right to the release of exculpatory information in proceedings entirely separate from

such a collateral challenge. There appears to be no authority creating a right to exculpatory evidence in proceedings such as these.

■ Finally, Baez contends that he is entitled to the redacted information under 5 U.S.C. § 706(1), which requires a reviewing court to "compel agency action unlawfully withheld." However, as the discussion above demonstrates, the redactions were not unlawful.

## IV. Conclusion

For the forgoing reasons, the court will grant the government's motion for summary judgment.

### ORDER

AND NOW, this 28th day of July, 2006, it is hereby ORDERED that:

(1) The motion for summary judgement of Defendants Federal Bureau of Investigation and U.S. Department of Justice (Docket # 10) is GRANTED.

(2) Judgment is entered in favor of Defendants Federal Bureau of Investigation and U.S. Department of Justice and against Plaintiff Orlando Baez.